This proceeding is brought for the purpose of reviewing an order made by the Industrial Accident Commission in the matter of an application to determine the amount of compensation, if any, payable by petitioner to M.C. Robinson because of an injury or injuries received by him in the course of his employment.
It appears that Robinson suffered two accidents, each of which having affected his right knee. The first accident occurred on August 25, 1921, and the second some three years and six months later, to wit, on February 26, 1925. No application or other proceeding was filed by Robinson with the Industrial Accident Commission for the purpose of having his rights determined with reference to the first accident until after the second accident had occurred. Compensation for the first accident and medical attention, however, were given to Robinson by his employer to the same extent as might have been awarded through appropriate action by the Industrial Accident Commission. It is further shown that after a period of some weeks following the first accident Robinson was discharged by his employer's physician *Page 316 
as cured from the effects of the first injury, and thereupon that Robinson returned to work at a lighter form of employment; that his knee, however, continued weak and unstable and at times "gave way," causing him considerable trouble and annoyance without necessitating a cessation from his work until the occasion when he suffered the second injury, at which time he was obliged to and did refrain from following his vocation for a period aggregating some three or four weeks.
In presenting his application to the Industrial Accident Commission for adjustment of the compensation due to him on account of his injury or injuries, Robinson joined as defendants each of the employers for whom he was working at the time the first and the second accident respectively occurred, together with the insurance carrier of each of them.
The findings by the Commission included the following:
"Said employee was a truck driver, 38 years of age, and said injury caused permanent disability consisting of trauma of right knee-joint, causing a chronic derangement of the joint and some pain on manipulation in extreme flexion; with a tendency of limb to give way under him at times.
"The percentage of said permanent disability is 14, entitling him to $20.83 a week for 56 weeks, amounting to $1166.48. Payments thereon $193.41; balance due $973.07. Said benefit is based upon earnings in excess of the maximum allowed by law in computing compensation.
"Said permanent disability as herein above determined became permanent and reached a stage at which the extent of permanent disability could first be definitely ascertained within six months and said permanent disability therefore constitutes a new and further disability under the provisions of Sec. 11 (c) of the Workmen's Compensation Act, and this application was therefore filed within the proper time."
An award was made by the Commission in favor of Robinson and against the General Accident, Fire and Life Assurance Corporation in the sum of $973.07 on account of the permanent disability which had resulted to Robinson from the first accident. The petitioner here being dissatisfied with such award, and having exhausted its remedies with the Industrial Accident Commission, has come to this court for a reviewal of the proceedings before the Commission, and urges that that body acted without and *Page 317 
in excess of its powers in the premises, and that the evidence adduced at the hearing before the referee of the Commission did not justify or support the findings of fact or the award.
The first contention of petitioner is that there was no evidence to indicate that Robinson ever suffered any permanent disability as a result of the injuries of which he made complaint. Turning to the transcript of the evidence, it will be found that the report on the case by one of the physicians included the statement that the patient has "a chronic internal derangement of the right knee-joint." The diagnosis of another physician was that a "mechanical derangement of the right knee-joint" existed, for the relief of which he recommended a surgical operation, closing with the statement that "we cannot expect any improvement in his present condition by conservative methods." A third physician gave it as his opinion that "undoubtedly there is a chronic derangement of the right knee-joint and the condition has reached a permanent stage
unless operative procedure is thought advisable."
[1] The question of permanency also involves a determination as to whether a surgical operation would relieve the condition of the right knee-joint of the applicant. [2] The consensus of opinion as expressed by the doctors who were called upon to give testimony regarding the advisability of performing an operation was that it would be exploratory in its nature and consequently problematical as to its outcome. One of them said: "As you are undoubtedly aware, knee-joint surgery should only be done by a surgeon who is competent to do such work"; and another surgeon stated in effect that the operating surgeon would not know the condition of the knee to any certainty until after the knee-joint was opened, and that unless such surgeon were very skillful the disability would probably be increased rather than diminished. In the face of such expert testimony the patient was under no compulsion to take the risk of the operation with the attending possible, if not probable, result of a worse rather than a better knee. [3] We think, therefore, that the finding by the Commission that such injury caused permanent disability was fully justified.
[4] It is also urged that there was no evidence upon which to base the finding that Robinson's permanent disability *Page 318 
"reached a stage at which the extent of permanent disability could first be definitely ascertained within six months" next preceding the date of the award.
The evidence shows that Robinson was not advised by any physician prior to the date of the happening of the second accident that the disabled condition of his right knee-joint was permanent. After the first injury some improvement was noticeable in the condition of the knee for a period of approximately ten months or a year. Just when the permanency of the disability became determinable apparently was not an ascertainable fact. Even at the time the hearing was held some contrariety of opinion prevailed among the doctors as to whether the knee had yet reached that stage. In such circumstances, if the question were vital to the case, in the absence of an opinion by the surgeon as to the date when the permanency of the disabled condition of the knee-joint became an established fact, it may be that the date of the hearing before the Industrial Accident Commission when the opinions of the doctors were accepted by the Commission as to the permanency of the condition should be taken as the date when the "permanent disability could first be definitely ascertained." However, in view of the language of section 11 (c) of the Workmen's Compensation, Insurance and Safety Act (Stats. of 1917, p. 831, as variously amended), it would appear that if the injuries received in the first accident "caused new and further disability," the question of the date when the permanent disability of Robinson was first determined would be immaterial, so long as the proceedings to have his claim adjusted were instituted within 245 weeks after the date when the first injury was sustained.
[5] It being established that the proceedings were commenced within the time limit of 245 weeks from the date of the first accident, the question remaining for consideration is whether "permanent disability" of the right knee-joint was within the meaning of the phrase "new and further disability," contained within the provisions of the statute to which reference has just been had.
In the case of Kauffman v. Industrial Acc. Com., 37 Cal.App. 500
[174 P. 690], it is held that "further disability" is a disability "in addition to that for which proceedings were commenced . . ., or that for which disability indemnity *Page 319 
has been paid or agreed to be paid. If there have been no proceedings commenced within six months from the date of the injury, and if there has been no payment of disability indemnity or agreement therefor, the employee is not entitled to institute proceedings grounded upon `further disability' after the expiration of six months from the date of the injury." That case, however, was directed to the question only of whether a claim might be filed for "new and further disability" in the absence of any award through the Industrial Accident Commission or compensation being voluntarily paid by the employer. It will be remembered that in the instant case the employer made full compensation to the employee based upon what was assumed to be his injuries received in the first accident.
The question has received the attention of the supreme court of this state on three separate occasions, in each of which it being inferentially determined that a "permanent disability" was a "new and further disability" within the meaning of the statute.
In the case of Imperial Ice Development Co. v. IndustrialAcc. Com. (L.A. 8334), which was before the supreme court on an application for a writ of review of an award by the Industrial Accident Commission, it appears that on February 18, 1922, a man by the name of Putnam sustained an injury to his right hand and thereafter received from the insurance carrier full temporary disability compensation and medical treatment until July 29, 1922, at which time, although there was still some contraction of the muscles in the hand, he returned to his employment. From time to time thereafter, until in the month of April, 1923, Putnam complained to the physician representing his employer that his condition was not improving, but on each occasion was assured by the physician that no permanent injury would result. However, on March 27, 1923, which was about eight months after any compensation had been paid to him, Putnam filed with the Industrial Accident Commission his application for adjustment of his claim for permanent disability, to which application the insurance carrier objected on the ground that the claim was barred by the provisions of the statute. The Commission disallowed the plea of the insurance carrier and recognized the permanent disability of Putnam as a "new and further disability" of the applicant; *Page 320 
which decision was carried to the supreme court by way of an application thereto for a writ of review. The application was denied without written opinion by the supreme court.
The next case is entitled Anaheim Co-operative Orange Assn.
v. Industrial Acc. Com. The facts of that case were similar to the essential facts in the case last cited herein, in that the employee suffered an injury to his hand for which he was fully compensated by the insurance carrier from the date of the accident by which he sustained the injury to the time when he was pronounced cured, and that thereupon he returned to his employment. More than one year and six months thereafter the employee filed with the Industrial Accident Commission an application for adjustment of his claim for permanent disability resulting from the injury for which he had received compensation. A plea of the statute of limitations was interposed by the insurance carrier, and, as was said by its counsel, the sole question involved in the proceeding was whether a permanent disability constituted a "new and further disability" within the meaning of the provisions of the statute. The Commission ruled in favor of the applicant. A petition to the district court of appeal for a writ of review was denied on the ground, as expressed in its opinion (70 Cal.App. 168 [233 P. 1115]), that on an identical question presented in the Putnam case (supra), the supreme court had denied an application for a similar writ. A petition for hearing in the supreme court after decision by the district court of appeal was filed and extensively briefed on its merits. The supreme court denied the petition.
In the third case (Otis Elevator Co. v. Industrial Acc.Com., S.F. 11819) a writ of review of an award by the Industrial Accident Commission was denied by the supreme court. Like each of the other cases, the question involved was whether a permanent disability constituted a "new and further disability" within the meaning of the provisions of section 11 (c) of the Workmen's Compensation Act. From the records the matter seems to have been ably presented and, although no opinion was rendered, it must be presumed that careful consideration was given to the question before the court. The application for a writ of review was denied; from which fact it would follow that the supreme court was *Page 321 
in accord with the conclusion reached by the Commission, to wit, that "new and further disability" was established by a permanent disability arising from the original injury.
It is suggested by petitioner that the application made by Robinson to the Industrial Accident Commission to have adjusted the matter of compensation for the injuries received by him was barred by the provisions of section 16, subdivision a, of chapter 176 of the Laws of 1913, and subsequent amendments thereto. But if the views heretofore expressed herein are correct, the statute upon which petitioner relies has no application to the facts herein.
Being guided entirely by the indicated rulings by the supreme court, we are constrained to hold that the award of the Industrial Accident Commission should be affirmed. It is so ordered.
Conrey, P.J., and York, J., concurred.