[Civ. No. 5887. First Appellate District, Division One.—October 10, 1927.]

THE ORINDA PROPERTIES COMPANY et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and WILLIAM DORAN, Respondents.

R. P. Wisecarver and Warren H. Pillsbury for Petitioners.

G. C. Faulkner for Respondents.

KNIGHT, J.—On March 9, 1927, the Industrial Accident Commission awarded the respondent Doran compensation for a permanent impairment of the function of the left wrist, which the Commission found had resulted from an accident occurring on July 3, 1925, while Doran was in the employ of the petitioner Orinda Properties Company, the compensability of which the petitioner insurance company at that time recognized. Petitioners now seek to have the award annulled, claiming that the evidence fails to support the Commission's findings that the impairment to Doran's

wrist was due to the injury of July 3, 1925, and that his claim was barred by the provisions of the statute and by his own laches.

The following facts appear from the record: On June 4, 1925, Doran was hired as a laborer at Orinda, California, by the Orinda Properties Company, and on July 3, 1925, sustained a fracture of the left minor wrist by falling from a roof. Said injury caused total disability up to and including September 9, 1925, during which period Doran was given medical treatment by Dr. Cuttle of Oakland, and was compensated therefor by the petitioner insurance company. On December 3, 1925, Doran severed his employment with the Orinda Properties Company and went to San Diego, working there at odd jobs for six months. He then proceeded to Lafayette, California, where, on June 8, 1926, he entered the employ of Twohy Bros., bending steel. During this latter employment and on November 3, 1926, he sprained this same wrist while cranking a gas engine. He was treated for a period of three and a half weeks by Dr. Holcomb, during which treatment X-ray pictures were taken of the wrist, and it was discovered that the wrist was permanently impaired as the result of a previous injury, and Doran was so informed.

Within a week thereafter Doran applied to the Commission for an adjustment of his claim against petitioners upon the ground that the permanent disability to his wrist from which he was then suffering and which had been revealed to him for the first time by the X-ray pictures taken by Dr. Holcomb was the result of the injury of July 3, 1925. He was examined by Dr. Harbaugh, assistant medical director of the Commission, whose written report, dated December 1, 1926, was filed with the Commission, showing a permanent impairment in the motion and grasping power of the wrist. The next day Doran filed the present petition to obtain compensation for the permanent injury. Petitioners denied liability therefor, and at the hearing, which took place on December 16, 1926, Doran testified in answer to questions propounded by the referee that in addition to the two injuries to his wrist above mentioned, he had sprained the same wrist about twenty years before, but that he was laid off as a result of it only two or three days; that he received no medical attention at the time,

and that afterwards his wrist was as "good or better" than the right wrist; that thereafter he had performed all kinds of hard work with it, in shipyards and in handling structural steel, and it had never given him any trouble until it was broken on July 3, 1925. So far as the record shows the only additional proof adduced at the hearing relating to Doran's permanent disability consisted of the report of Dr. Harbaugh, which, after reciting the history of the case with reference to the fracture on July 3, 1925, and the sprain in November, 1926, stated: "X-ray pictures show evidence of an old fracture of a certain small bone of the wrist"; and the report concluded: "It seems to me that the man has some permanent disability with reference to the injury in July. . . . "

We are of the opinion that the foregoing evidence is sufficient to sustain the Commission's finding that the permanent impairment complained of was due to the fracture of July 3, 1925. As said in *Southern Pacific Co.* v. *Industrial Acc. Com.*, 177 Cal. 378 [170 Pac. 822]: "This court, in reviewing awards of the commission, is not acting as a court of appeal. It has no power to weigh the effect of positive evidence. It must assume that the commission believed all the evidence given which tends to sustain the award made. . . . The findings are not subject to review except in so far as they may have been made without any evidence whatever in support thereof. The review of the findings, even in such cases, is not based on the theory that they are not supported by the evidence and that we are weighing evidence to determine that proposition, but upon the theory that the commission has no jurisdiction to make a finding where there is no evidence to support it."

Petitioners contend, however, that they were deprived of the benefit of the contents of two medical reports made to them by Doctors Cuttle and Carlson about the time that Doran was discharged from medical treatment for the fracture of July 3, 1925, and which reports, if considered by the Commission, would have placed a different aspect upon the case as to the cause of the permanent impairment of the wrist. With reference thereto the record shows that at the conclusion of the hearing on December 16, 1926, an order was made that the case remain "open five days for filing medical reports, otherwise submitted." Pursuant to

said order petitioners forwarded to the Commission the two medical reports above referred to, but it seems the same were not received by the Commission until two days after the expiration of the time allowed, and were never officially filed as exhibits in the case. Petitioners assert that it was not until after their motion for a new trial had been denied by the Commission that they discovered said reports had not been filed, and that therefore they make complaint thereof for the first time in this proceeding.

The first report was dated July 30, 1925, and was made by Dr. Carlson, orthopedist, to Dr. Cuttle. He stated that the X-ray pictures taken by him showed that the accident of July 3, 1925, caused a "fracture of the distal end of the radius, running into the wrist joint"; also "an old impacted fracture of the scaphoid bone"; and that the examination showed a definitely limited motion of the wrist, some of which was "no doubt associated with his injury of July 3." The second report, dated September 14, 1925, which was several days subsequent to Doran's discharge from medical treatment for the July accident, was made by Dr. Cuttle, whereby petitioners were informed that "the case was not one of simple fracture of the radius, but that on account of the previous wrist injury aggravated by the recent accident there was a considerable amount of limitation of motion in the wrist joint," that at the time of Doran's discharge "he still had a good deal of stiffness in the affected wrist," and that "It may be necessary to take up at a later date the question of residual stiffness."

Even though it be conceded, as petitioners contend, that said reports should have been made a part of the record herein, we find nothing contained in either of them with reference to the existence of the earlier injury substantially or materially differing from the facts as they were established at the hearing before the Commission by the testimony of Doran and the report of Dr. Harbaugh. Doran testified without hesitation that twenty years before he had sprained the same wrist; and the report of Dr. Harbaugh recites that "X-ray pictures show evidence of an old fracture of a certain small bone in the wrist"; consequently, the fact of an earlier injury was brought clearly before the Commission before its award was made. No greater knowl-

edge as to the existence of that injury could have been imparted to the Commission by the contents of the reports in question, and since each report indicated that, notwithstanding the injury of twenty years previous, more or less of the stiffness which was then present and which was anticipated might continue in the future was, as Dr. Carlson expressed it, ''no doubt associated with the injury of July 3,'' it cannot be said that the Commission would have reached any different conclusion with reference to the cause of such permanent impairment had the contents of said reports come properly before it. Evidently petitioners were not taken by surprise at the testimony given by Doran, because they were informed as to the existence of the earlier injury by the reports of Doctors Cuttle and Carlson made to them some fifteen months before; and if, as petitioners claim, Dr. Harbaugh had no information as to the earlier injury at the time he made his report, and therefore based his conclusion as to the cause of the permanent injury upon an erroneous assumption of facts, petitioners had ample opportunity before the hearing closed to have Dr. Harbaugh's report corrected, which they did not seek to do.

We think it cannot be assumed, however, from the mere fact that the reports of Doctors Cuttle and Carlson were not officially filed and that their contents were not considered by the Commission in making its award. Admittedly the reports were in the possession of the Commission for that purpose within the seven days after the cause was heard, and were found among the records of the case at the time petitioners' motion for a new trial was made on November 20, 1926. Furthermore, petitioners concede that the failure to file said reports was doubtless due to a clerical error; that there was no order made excluding them from the record; and that the referee read them and gave them such consideration as he deemed proper in recommending a decision, which was rendered some two and one-half months subsequent to the receipt of the records by the Commission. From the circumstances mentioned it may be fairly inferred, we think, that notwithstanding that the reports were not officially filed as exhibits, the Commission like the referee, gave the contents thereof such weight as it deemed proper.

For the reasons stated, we conclude that the failure to file said reports has not operated to deprive petitioners of any substantial right, and that either with or without said reports the finding of the Commission as to the cause of the permanent impairment of the use of the wrist is legally supported.

Equally without merit are petitioners' further contentions that Doran's claim for compensation was barred by the provisions of the statute and by his own laches. ▪ A permanent disability is deemed to be a ''new and further'' disability within the meaning of section 11 (c) of the Workmen's Compensation Act (*General Acc., Fire & Life Assur. Corp.* v. *Industrial Acc. Com.*, 77 Cal. App. 314 [246 Pac. 570]) ; and an applicant is entitled to file a claim therefor at any time within six months after he becomes aware of the existence of such a new and further disability (*Hutchinson Lumber Co.* v. *Industrial Acc. Com.*, 77 Cal. App. 141 [246 Pac. 118]). ▪ The evidence here shows that although Doran was informed by Dr. Cuttle in September, 1925, that he would suffer some soreness and rheumatism as a result of the accident of July 3, 1925, it was affirmatively established that Doran did not learn that there was a permanent impairment of the use of the wrist until he was informed of such fact by Dr. Holcomb at the time the latter took the X-rays in November, 1926; and within a few days thereafter Doran filed the present application for an adjustment of his claim, which was well within 245 weeks from the date of original injury in July, 1925. Under such circumstances his application was filed in ample time (*Hutchinson Lumber Co.* v. *Industrial Acc. Com., supra*).

The award is affirmed.

Tyler, P. J., and Cashin, J., concurred.