**STATE ex HELPMEYER et v SHROYER et**

Ohio Appeals, 2nd Dist, Montgomery Co

No 1395. Decided June 16, 1936

Joseph W. Sharts, Dayton, for appellees.

John K. Evans, Ass't Attorney General, Nicholas F. Nolan, Pros. Attorney, Dayton, and Ralph Gross, Ass't Pros. Attorney, Dayton, for appellants.

## OPINION

**By THE COURT**

This was an action in mandamus, seeking an order commanding the appellants to issue a certificate of aid to Albert Helpmeyer and Katie Helpmeyer, appellees.

The facts developed by the pleadings and evidence are that the appellees, Mr. and Mrs. Helpmeyer, husband and wife, filed separate applications for pensions on June 10, 1934, which applications were rejected by the Montgomery County Board on or about June 12, 1934, for the reason that the value of Building & Loan deposits and of real estate owned by the applicants was in excess of $4,000. The applicants prosecuted appeal to the Division of Aid for the Aged which, though conceding that of the date of the action on the appeal, namely, July 15, 1935, applicants did not have property of the net combined value of $4,000, rejected the appeal on the ground that the applicants were not in need.

According to the application of Mr. Helpmeyer, he then owned real estate at 117 Valleyview Drive, Dayton, Ohio and had on deposit in the American Building & Loan Ass'n., Dayton, $1955 and had debts totalling $775, no part of which appeared to be a lien or encumbrance on his real estate. It also appeared that there was a mortgage on the real estate in the sum of $500.

After the action of the local board rejecting the applications of the Helpmeyers and pending the application to the Division Mr. Helpmeyer sold his real estate. The sale price was $4362. After the payment of the mortgage, taxes, certain other debts and real estate commission, the real estate netted Mr. Helpmeyer approximately $3350.

At the time of the hearing on the action in Common Pleas Court and probably at the time of the hearing on appeal to the "Division" the Helpmeyers had $2,000 in postal savings, $200 on deposit in the Winters National Bank, Dayton, Ohio, a $500 certificate of claim in the American Building & Loan Association, Dayton, which was worth 72c on the dollar, or $360. It may be that at the time of the hearing of the appeal the Helpmeyers had certificates of claim in a sum greater than $500 but to determine this would require minute and searching tabulation of figures and dates and it is not material to the ultimate question presented.

By appropriate pleading the applicants averred that they had observed all of the conditions of §1359-2 GC, which conditions were set up in detail. The petition also carried the general averment that they had fulfilled "all requirements governing such applications for aid provided by law and by the rules and regulations of said Division." There was a general demurrer filed by the appellants to the petition which was overruled.

Thereafter issue was drawn upon the compliance of the applicants with (h), (i) and (j) of §1359-2 GC; (h) reads:

"Is unable to support himself, and has no husband, wife, child or other person who is able to support him and who is responsible by law for his support."

Sub-division (i):

"The net value less all encumbrances and liens, of all real and personal property of such person does not exceed $3000.00; or, if married, the net value of the combined property of husband and wife does not exceed $4000.00."

Sub-division (j):

"Has not directly or indirectly deprived himself of property or income in order to qualify for aid."

And also that it did not appear that the applicants were entitled to aid under §1359-1 GC because they were not in need.

It is contended among other claimed errors, that the trial court erred in overruling the demurrers of appellants. We hold that the demurrers were properly overruled, inasmuch as there was a general averment of compliance by applicants with the pro-

visions of §§1359-1 and 1359-2 GC and there was no motion to make definite the averment as relates to §1359-1 GC.

The trial court took the case upon the theory that the right of the applicants to the writ of mandamus should be determined upon the facts as they developed at the time of the trial and not as appearing when the local board acted on the application nor when the Division acted upon the appeal. Some objection was offered to this procedure at the time of the hearing but no error is predicated thereon.

It is only fair to the Montgomery County Board that the court give consideration to the rights of the applicants as appearing in the written applications which they themselves made and upon which the board acted. If the board acted within its rights and properly under the facts as appearing at the time of the original action on the applications of the Helpmeyers, then they were not entitled to pensions as of that date.

At the outset it should be noted that the burden of proof in this case was at all times upon the applicants to show that the local board in the first instance, and later the Division on appeal, acted contrary to the Old Age Pension Act and that the applicants met all of the applicable conditions set forth in the act; also that a writ of mandamus is an extraordinary writ, granted only upon a showing that there has been a clear violation of a legal obligation enjoined upon the officer or board against which the writ is to issue. Thus, upon the question whether or not the combined net value of the property, real and personal, of the Helpmeyers as of the date when the local board acted upon their application was less than $4,000, the necessity of proof was upon the applicants.

The record discloses no evidence whatever offered by the applicants directed specifically to the fair market value of the real estate as of the date when the local board rejected their applications. It does appear that they listed their property with a real estate broker in May, 1935; that on June 4 following, a purchaser was found and that the sale was closed June 17, 1935, the purchase price paid being $4,300. It would seem safe to infer that the market value of the property when the applications were rejected was as high as the sale price of $4,300. This sale was made under conditions which would at least tend to show that the sale price was not the full market value of the property because there is evidence that the Helpmeyers were under stress and had the thought in mind that it was necessary to sell that they might receive their pensions.

It appears defensively that the administrator of the local board took the tax valuation of the real estate of Mr. Helpmeyer as a basis of its value.

This court, in the case of Sims et v Norfolk & Western Ry., 15 Abs 422, divided on the question whether or not tax valuation was some evidence of the market value of real estate. Be that as it may, it is not controlling in this case because it reasonably appears that a valuation of $4,300.00 was fair to the applicants and they have shown nothing to reduce it. The total value, then, of the holdings of the Helpmeyers as of the date the local board acted upon their applications, was $5,275.00 if the cash value of the certificates of claim in the Building & Loan be estimated at 50 cents on the dollar. The liens and encumbrances would not have been sufficient to reduce the combined net value of the real estate below $4,000. We are of opinion that proof was not made that the local board did not act within the law and particularly (i) of §1359-2 GC in rejecting the applications.

The ultimate question, however, upon which the court decided the case and upon which the issues were drawn does not relate to the ground upon which the local board rejected the applications but to the relation of §1359-1 GC to the provisions of §1359-2 GC.

Sec 1359-1 GC provides:

"Subject to the provisions of this act every person of the age of 65 years or more shall, while residing in the State of Ohio, if in need, be entitled to aid as hereinafter specified."

It is the theory of the appellants that though all the conditions of §1359-2 GC be fulfilled by the applicants, yet they may not be in need and that it is a prerequisite to the allowance of the pension that it be determined that the applicants are "in need" as provided in §1359-1 GC.

The claim of the applicants is that, having observed all of the conditions of §1359-2 GC and having indicated a willingness to transfer their property to the Division of Aid for the Aged in trust as provided in §1359-6 GC, the pensions must be granted.

We are of opinion that the claim of the appellants is well grounded and that the County Board in the first instance, and the Division on appeal, is not required to act favorably upon an application for a pension if, in the exercise of a sound discretion, it does not appear that the applicant is in need. It may be determined that an applicant having fulfilled all of the requirements of §1359-2 GC is not entitled to the benefits of the act, though willing to transfer his property to the Division of Aid for the Aged in trust, as provided by §1359-6 GC.

In the instant case the assets which the applicants had at the time of trial were, in the main, readily convertible into cash and available for use for their support and maintenance.

The fact that these assets were liquid and therefore available to use as cash tends more strongly to support the conclusion that the applicants were not in need than if they had real estate of the value of $4,000 upon which they could not secure a loan. We readily understand how individuals who owned real estate of considerable value were actually in need during the late depression.

Sec 1359-14 GC provides in part that "applications for aid * * * shall be made yearly to the county boards." This permits of a renewal of the applications of the Helpmeyers. From the money which they have available for use they can provide for themselves satisfactorily and certainly in a manner that it can not be said that they are or will soon be in need. If the property of the applicants was transferred in trust and of sufficient value the Division would be reimbursed to the full extent of the pensions paid, plus 4%. This amount would be paid out in sums not to exceed $50.00 per month. As the applicants are now situated they may expend more than $50.00 per month if and when their holdings are expended they will clearly be entitled to the benefits of the Act.

There must be considerable latitude accorded to those who have in charge the administration of the Old Age Pension Act. It was put into law by the direct vote of the people and in the form in which it now appears in the General Code. Thus, when approved by the voters there appeared in its provisions, as a prerequisite to securing the aid therein provided that the applicant be in need. The expression "if in need" has some flexibility in meaning but is commonly understood. The act contemplated that the officers and boards therein created should administer it and provides that upon an appeal to the Division by any person aggrieved by the action of a local board, the decision of the Division thereon shall be final. If there is read into this power of the Division the requirement to exercise sound discretion in performing its duties, that is all that is required and is fair to those who are affected by the provisions of the act.

The provision authorizing the board to require an applicant, as a prerequisite to issuing a certificate of aid, to transfer his real and personal property to the Division in trust has been amended H.B. 605, passed April 2, 1936.

In the instant cause we perceive no reason why the local board could not safely and, with propriety have granted the applications of the appellees. The advanced ages of the applicants practically assured the State of Ohio that it would be made safe for any and all expenditures that were made to the applicants as pensioners. However, it is not for this court nor any other court to interpose its judgment as to the fitness of the action taken by the board on any application, so long as its action does not contravene the authority granted by the act.

The purpose of the Old Age Pension Act is to help aged persons to the extent which is therein provided and thus prevent or at least tend to prevent their need of support, care and maintenance. The act should be administered humanely and in the spirit of helpfulness which was in the mind of those who fostered the legislation. If applicants possess enough of this world's goods from the proceeds of which they may do that which the pension would enable them to do, then the boards which administer the act may not be required to accord them the aid therein provided.

We are satisfied that the Division of Aid for the Aged acted within the authority of the law in refusing the relief sought by the applicants on the appeal from the action of the Montgomery County Board.

The judgment of the trial court will,

therefore, be reversed in accord with this opinion.

BARNES, PJ, HORNBECK and BODEY, JJ, concur.

## ON APPLICATION FOR REHEARING

Decided July 13, 1936

By THE COURT

Submitted on application for rehearing, of which there are four grounds.

The first ground asserts that the court is without jurisdiction to entertain the appeal in this case, as the action was in mandamus and the review should be on error. This position is probably well taken had it been timely urged. The cause having been submitted to the court upon appeal by counsel without any objection to the form and the court having been  permitted to act without interposition of the claim that the type of review was improper, it is now too late to urge it. **Drake et, Trustees v Tucker et, 83 Oh St 97. Steed v Baker Wood Preserving Co., 15 Abs 644.**

The second ground directs the attention of the court to §1359-29 GC of the act, which provides that "it shall be given liberal construction to accomplish its purposes." We are cognizant of the section quoted but as a rule of construction it does not require a different determination of the cause. The question raised by the third ground of the motion relates to the right of decision of the cause upon appeal, which we have heretofore considered and the fourth branch discusses subject matter to which we gave extended consideration in our original opinion.

The application for rehearing will be overruled.

BARNES, PJ, HORNBECK and BODEY, JJ, concur.