SCOBEY ET AL., APPELLEES, *v.* FAIR, ADMR., ET AL., APPELLANTS.

(No. 324—Decided March 23, 1942.)

*Messrs. Henderson & Henderson,* for appellees.

*Mr. C. S. Huffman* and *Mr. C. W. Chorpening,* for appellants.

SHERICK, J.   This proceeding had its origin in the Probate Court, from which an appeal on questions of law has been prosecuted directly to this court. The questions propounded grow out of exceptions taken to the administrator's final account. We are apprised by the original papers, a meager agreed statement of facts and the transcript of docket and journal entries, of the following facts.

It is made to appear by an unidentified paper, appearing within the transcript, purporting to be execut-ed by the Department of Public Welfare, Division of

Aid for the Aged, and directed to Harvey W. Fair, individually, that on or prior to February of 1937, Harvey W. Fair, and presumably his wife, Elma Fair, had been granted an old age pension, and from that date to December of 1940, he or they had been assisted in the sum of $743.35. A second paper appears within the transcript which discloses that the claim is sworn to by a departmental deputy. It recites that the claim is due from Harvey W. Fair, who thereon acknowledges to have received it. It was presented to Harvey W. Fair as administrator. We do not know whether the claim was allowed or disallowed, but presume the former to be true.

From the court journal of December 3, 1940, we learn that Elma Fair had previously died and Harvey W. Fair was appointed administrator of her estate. Thereafter Fair filed a final account. This paper advises us that her estate, including two pieces of real property, had been converted into money. Exceptors question the administrator's failure to charge himself with an item of $90 rent received; and a credit item of $693.85 due the Division of Aid for the Aged.

The Probate Court's journal of December 22, 1941, discloses that the exceptions came on to be heard and that the matter was submitted to the court. It is not disclosed whether any evidence was presented. The court found in exceptors' favor on both items, that is, that the administrator was chargeable with the $90 rent item, and that the estate was not chargeable with the $693.85 item. With respect to the latter item, the court went further and held "that said sum of $693.85 is not a proper charge against the share of the estate belonging to the sons of the decedent (by a former marriage, who are the appellee exceptors) but is a proper charge against that part of said estate belonging to H. W. Fair." It was thereinafter so ordered,.

and from this order Fair appeals as an individual and as administrator.

The agreed statement of facts recites that three rooms in the mansion house, two upstairs and one down, had been rented for a long period of time. The bathroom was used jointly. The two rooms upstairs had an outside stairway. The lower room "had separate inside stairway-door way." These three rooms were not used by the Fairs as a mansion house. From this stipulation we are unable to tell whether this was or was not a two-family apartment. The trial court held these three rooms to be an apartment and not a part of the mansion house. We cannot gainsay this finding. The appellant, however, claims that the mansion house is a single dwelling, that he is not only entitled to it for the period of one year under Section 10509-79, General Code, but the premises as well, and the right to continue to rent these three rooms and to receive the rents therefrom. If this mansion house had been used as a single dwelling, it and its environs would have been his to enjoy and possess for the statutory time.

But what should be the rule under the statute, if the mansion house happens to be the upstairs rooms of a store building, or a single flat in a two, four or ten-suite apartment? If the family occupies one apartment and rents other apartments under the same roof surely it was not intended or contemplated that a surviving spouse might be entitled to the year's rental of all other apartments which were let for profit. The purpose of the statute was to preserve the home for the surviving spouse for the period of one year; and that which is used, possessed and occupied by the family as a home is the mansion house. From the discoverable facts upon which the court acted, it is our judgment that the court did not err in its finding and order made in respect to the first excepted to item.

And now returning to the principal question before us, and a consideration of the Old Age Pension Law as adopted by the people on an initiative petition and popular vote, and subsequent legislative amendment, we first choose to state that its purpose was to aid or to pension the state's aged people who came within its provisions. It was not intended as a pauper law as theretofore known under the common and statutory law, although it is in some respects akin thereto.

It did not create contractual relationships between the state and recipients of the state's bounty. Neither was it intended to create a relationship of debtor and creditor, nor the establishment of a loan agency. Its purpose was more charitable and humane. It assured aged people that if life had been unkind to them in a financial way, and with age came lack of sustenance, then the state would consider them as wards of the state without recompense.

As the law now stands by popular vote and legislative amendment, the people have seen fit and proper to prescribe two instances and no more in which the state may recover back its gratuities paid to aged people in a civil action. In both instances the recipients must and do accept aid with this in mind.

Section 1359-23, General Code, prescribes that if one should procure aid, or a higher rate of aid than that to which he was entitled by means of any fraudulent misrepresentation, he must pay it back to the state. This requirement protects the fund from spoilation by undeserving persons. It is a wise condition placed upon the giving of aid from the state's funds.

The second condition placed upon aid to the aged is directed towards those recipients who possess non-income producing property but who need aid nevertheless. Among this class are those who own their own homes. But it was recognized that if the state

aided those possessed of some material substance, the sum of the aid furnished should be returned to the state out of their estates if they left one. To that end Section 1359-7, General Code, was made a part of the act. We quote it in full:

"Upon the death of a person, the total amount of aid paid to said person and to his or her spouse under this act, shall be a preferred claim against the estate of such deceased person, having priority and preference over all unsecured claims except the bill of the funeral director not exceeding two hundred dollars, the expense of the last sickness and those of administration, and the allowance made to the widow and children for their support for twelve months."

It clearly appears that the Fairs come under this class. The deceased owned her own home. If the surviving spouse is possessed of any property it has not been shown. We must presume that he has no property. The fact that the department caused his claim to be presented to the administrator of the wife's estate is indicative of a further fact that the aid furnished was for both husband and wife and not to him alone. With these observations in mind, we call attention to the act, which nowhere therein, contains any provision that a recipient in his lifetime must reimburse the state for aid furnished, save and except in the single instance prescribed by Section 1359-23, General Code, above noted. If the act had generally so provided, aid might be distributed with the one thought in mind of the recipients' ability to repay it, and the state become the creditor to aged pensioners. This was not the spirit which prompted or the purpose of the act. It was found that the original act was faulty in that it required aged and destitute home owners to convey their homes to the donor as a prerequisite to aid. That feature of the law has been repealed, be-

cause it did not comport with the contemplated liberality of the act.

The first portion of Section 1359-7, General Code, is clear and explicit. It directs as a statutory obligation, that those married couples who receive aid, shall reimburse the state out of the estate of the spouse who shall first die, that is, if he or she leave any estate. It is written that the state's claim shall be preferred against any such estate. It does not say that the claim shall be assertable against the husband or wife relict or the surviving spouse's interest in the estate of the deceased consort. If the contrary were true, the very thing would happen which is pointed out in the preceding paragraph. And this is exactly what has been accomplished by the trial court's finding and judgment on the second exception.

In *City of Worcester* v. *Quinn*, 304 Mass., 276, 23 N. E. (2d), 463, 125 A. L. R., 707, it was sought to recover aid previously furnished an aged lady, who was still in full life. It was insisted that inasmuch as she had come into an inheritance, she must repay. The court denied the donor's claim and rightly so. The entire matter of aid to the aged is purely statutory. The act embraces the subject's entire scope and operative effect. Its disbursements are gratuities, recoverable only when and in the manner and from the source therein directed. Sections 1359-7 and 1359-23, General Code, fully and completely cover the subject.

But it is said that a husband is bound by statute, Section 7997, General Code, to support his wife, and hence his interest in her estate must repay the state's aid. The answer is, that the purpose of this ancient general statute is to secure support for a living wife and minor children from a husband who is remiss in this duty when he has property or earning power. It is not a part of the specially enacted Old Age Pension

Law. It could not have application against an infirm and indigent aged husband. No law should or does require the impossible. We think the claim is far-fetched and needs no further comment.

It follows that the judgment of the Probate Court is modified as herein indicated; that is, the estate of Elma Fair, and not the interest of H. W. Fair therein, must repay the aid which both received. In all other respects the judgment is affirmed.

*Judgment accordingly.*

LEMERT, P. J., and MONTGOMERY, J., concur.