Argued June 1; affirmed June 29, 1943

## RADER v. BARNER ET UX.

(139 P. (2d) 130)

[ 1 ]

Before BAILEY, Chief Justice, and ROSSMAN, LUSK, BRAND and HAY, Associate Justices.

*Walter T. Durgan,* of Corvallis (Fred McHenry, of Corvallis, on the brief) for appellants.

*Arthur K. McMahan,* of Albany (Karl T. Huston and Lester G. Oehler, both of Corvallis, on the brief) for respondent.

HAY, J. On October 23, 1930, plaintiff executed his promissory note in the sum of $200 in favor of the Alsea State Bank. The note was made payable six months after date, and was secured by a mortgage of approximately 145 acres of land in Benton county, Oregon. On the same day, the plaintiff executed another note to the same bank in the sum of $214, also payable six months after date. This note was secured

by mortgage of certain chattels. Both notes bore interest at the rate of eight per cent per annum.

The Alsea State Bank was a small country bank, operating in the Alsea community in Benton county, and the defendant B. B. Barner was one of its principal stockholders. He was also cashier of the bank and a member of its board of directors.

On June 28, 1932, the bank was voluntarily placed in liquidation and B. B. Barner was appointed liquidating agent. As such, Barner made several ineffectual demands upon Rader for payment of his notes. On March 26, 1934, there was due and unpaid upon the two notes the sum of $340.40, with interest thereon from February 9, 1932. Taxes upon the real property were delinquent in the principal sum of $201.42. Mr. Rader alleges in his complaint that at that time Mr. Barner represented to him that, if he would convey the mortgaged real property to Barner, the latter could sell it to one Stouder for $1100, and would enter into a contract of sale with Stouder which would provide that, after the indebtedness to the bank was paid in full, the remainder of the purchase price should be paid to Rader. Mr. Barner contends, on the contrary, that there was no such understanding. His version is that he and Rader agreed that Rader should convey all of the mortgaged real property, with the exception of some sixteen acres lying north of a certain road, upon which excepted tract Rader's house was situated, in satisfaction of the indebtedness which Rader owed to the bank, and that Barner would cause the notes to be cancelled, satisfy the mortgages, and pay Rader the sum of $100.

On March 26, 1934, Rader executed a conveyance of the mortgaged real property, with the exception of the sixteen acres mentioned, in favor of the defendant

Maria Barner. The promissory notes were marked "paid" and surrendered to Rader, and, within a few days thereafter, Barner caused the mortgages to be satisfied of record. The trial court found moreover that Barner paid Rader the sum of $100.

Immediately after title to the land had become vested in Maria Barner, the defendant B. B. Barner executed a written agreement to sell the property to Stouder for the sum of $1100, payable by installments of $20 per month, with six per cent interest per annum, and without any down payment. In process of time, Stouder completed his payments and received a conveyance of the property.

This action was commenced on November 1, 1939. The complaint prays that an accounting may be had of the transactions and dealings of the defendants in connection with the sale of the real property to Stouder, and demands judgment for whatever moneys the defendants received by virtue of the sale of the property to Stouder in excess of the amount of Rader's indebtedness to the bank. As grounds entitling plaintiff to such relief, it is alleged that, in order to induce him to transfer the property, Barner falsely represented to him that he (plaintiff) would be unable to borrow sufficient money to discharge his indebtedness to the bank; that Barner could sell the real property for $1100; that, from the proceeds of such sale, Barner would retain the amount necessary to pay the bank and the balance of the sale price would be paid to plaintiff; and that the contract of sale to be entered into with Stouder would be drawn so as to provide for the disposition of Stouder's payments accordingly. These representations, the complaint stated, were false and fraudulent, and were made for the purpose of defrauding plaintiff out of his property, and the defendants had no intention

of permitting plaintiff to receive the amount of the sale price over and above his indebtedness to the bank. Defendant Maria Barner had full knowledge of the representations. Plaintiff relied upon the fraudulent representations, believed them to be true, and, so believing, was induced to execute the conveyance to Mrs. Barner. Plaintiff was sixty-nine years of age, and, because of his age, was more easily imposed upon and misled by Barner. Plaintiff had had previous dealings with Barner in his capacity as cashier and director of the bank, and, for that reason, imposed trust and confidence in him. He did not discover the falsity of the representations which had been made to him until the fall of 1938.

■ Defendants answered by general denial, and alleged affirmatively that, after numerous demands upon plaintiff for payment of his notes, plaintiff himself expressed to Barner a willingness to convey the premises to the bank in satisfaction of the notes, if the bank would "pay him something". Thereupon Barner offered plaintiff $100, and to satisfy the notes and mortgages in full in consideration of plaintiff's conveying the mortgaged real property to the bank, except for the sixteen acres above referred to. Rader agreed to such proposal and executed and delivered to Barner, as liquidating agent of the bank, a deed conveying the property to Mrs. Barner. Barner thereupon, as liquidating agent, paid plaintiff the sum of $100 from the bank's funds and, in due course, satisfied the mortgages of record. The deed was delivered by plaintiff and accepted by Barner without any reservations or conditions. Title to the land, as a matter of convenience, was taken in the name of the defendant Maria Barner. On the same day, Barner, as liquidating agent, caused Maria Barner to enter into a written contract

for the sale of the property to C. E. Stouder for $1100, payable in installments. Such contract was thereafter held by Barner as liquidating agent, and all payments made thereon were credited "to the assets of said bank in liquidation". On or about March 13, 1935, the Stouder contract was assigned to Maria Barner by Barner, as liquidating agent of the bank. Thereafter Stouder completed payment of the purchase price, and the Barners thereupon conveyed the premises to him. The answer also affirmatively raises the defense of laches against plaintiff, but in our opinion that defense was not sustained.

■ It is conceded by the defendants that Mr. Barner threatened to foreclose the bank's mortgages. He had a legal right to do this, and his action in this respect cannot, in itself, be regarded as coercion or duress. *First National Bank v. Multnomah Lbr. & Box Co.,* 125 Or. 598, 622, 268 P. 63; 17 Am. Jur., Duress and Undue Influence, section 17; 11 Am. Jur., Compromise and Settlement, section 29, note 16.

■ There was no fiduciary relationship between the parties, either as banker and customer, or as liquidating agent of the mortgagee and mortgagor. However, if Barner agreed, in consideration of a conveyance of the mortgaged lands by Rader, to sell the property, and to provide in the contract of sale that the proceeds should be paid to Rader after satisfaction of his indebtedness to the bank, then Barner's failure to carry such agreement into effect, and his retention of the sale price over and above the amount of the indebtedness, made him a trustee in the premises, and entitled Rader to seek the relief of a court of equity to compel an accounting. *Campbell's Gas Burner Co. v. Hammer,* 78 Or. 612, 619, 153 P. 475. It is unnecessary for us to consider the allegations of fraud, as the complaint is sufficient to

support a cause of suit for failure to account under the alleged circumstances.

There is direct conflict in the testimony in some respects. Mr. Barner testified that he knew nothing about Mr. Stouder's interest in purchasing the property until the latter came to him the day after he had made his agreement with Rader, but before Rader had actually signed the deed. Rader himself testified that when Barner told him he was going to foreclose, he told Barner that Mr. Stouder was talking about buying the place and maybe he could make a deal with him. He said that Barner then went to see Stouder and, on his return, told him (Rader) that Stouder would pay $1100 for the place, and that he (Barner) was going to draw up the contract the next morning. He said that Mr. Barner told him on that occasion: "This contract will be drawed up for $1100 and when I get my money out of it,—all I want out of it is what I have got into it."; there were some taxes to pay, "so he said the contract would be made out for $1100 and when he got his out he would turn the contract over to me and I can collect the rest from Mr. Stouder. I never did see the contract, I don't know what was in it or anything about it." Rader was corroborated by both Mr. and Mrs. Stouder. Mr. Stouder testified that, at the time the contract of sale was executed by Mrs. Barner and him, Mr. Barner said that "after he got his expenses and what he was out on taxes, Pat would receive the balance, what he was out in expenses and taxes and the mortgage and interest." Mrs. Stouder testified, relative to the same occasion, as follows:

"Q. What, if anything, did Mr. Barner say at that time with reference to the manner in which the payments he received from Mr. Stouder would be applied?

"A. Well, he said when he got his payment, what he had coming, he would pay Pat.

"Q. You mean Pat Rader?

"A. Yes."

These statements were denied by Mr. Barner as a witness in his own behalf.

■ While the case is here to be considered *de novo,* the trial judge had the inestimable advantage of seeing and hearing the witnesses, and under the circumstances we are inclined to give great weight to his decision. The question involved is precisely one of veracity between plaintiff and Mr. and Mrs. Stouder on the one hand and Mr. Barner on the other. We are not disposed to substitute our judgment for that of the trial judge upon this question in this particular case.

The decree of the trial court is affirmed, with costs.