BOONE COUNTY OLD AGE ASSISTANCE BOARD, BOONE COUNTY, NEBRASKA, APPELLEE, V. I. H. MYHRE, ADMINISTRATOR OF THE ESTATE OF MARY DOTY, DECEASED, APPELLANT.

32 N. W. 2d 262

Filed May 7, 1948.   No. 32413.

*William Keeshan* and *Alvin L. Berthelsen,* for appellant.

*Walter R. Johnson,* Attorney General, *Clarence S. Beck, Homer L. Kyle,* and *Stanley J. Oliverius, Jr.,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

PAINE, J.

This is an appeal from the allowance of a claim filed by the county treasurer against the estate of Mary Doty, deceased, who had been paid in her lifetime, by the Boone County Old Age Assistance Board, monthly payments for some eight years. The total face amount of said monthly warrants was $2,402.18, for which sum the claim was filed. The appeal from the allowance of this claim is made by the administrator of her estate.

The action is based on a claim filed in the county court on November 15, 1946, by Boone County Old Age Assistance Board against the estate of Mary Doty, deceased, for old age assistance furnished her from July 1938 to June 1946 in accordance with section 68-215, R. S. 1943. This itemized claim set out the date issued, the warrant number, and the amount of each of the 96 monthly payments, amounting to the total sum of $2,402.18. The claim was sworn to by the county treasurer of Boone County.

Some ten objections were filed to this claim and presented. On March 18, 1947, the county judge overruled

the objections and allowed the claim in the full amount of $2,402.18, as a claim of the fourth class against said estate. § 30-615, R. S. 1943. In said order it was stated that the administrator had intimated his intention to appeal from this order and that no appeal bond would be required. § 30-808, R. S. 1943.

Upon appeal and hearing before the district court, it was stipulated generally that the action should be heard upon the original pleadings as filed in the county court, which included the objections there filed by the administrator. It was further stipulated that there was no dispute that the amount of old age assistance furnished to Mary Doty between July 1938 and June 1946 amounted to $2,402.18; that Mary Doty at the time of her death was the owner of Lots 5 and 6, Block 77, in the town of St. Edward, Boone County; and that there were real estate taxes due thereon of $233.45, said taxes being a first and prior lien on said real estate and having been paid by the administrator of the estate.

It was further stipulated that her application for old age assistance was in the form effective at the date of application; that Mary Doty died on July 14, 1946, and I. H. Myhre was the duly appointed, qualified and acting administrator; that she described her property in her application for state assistance; and that an old age assistance lien was filed of record July 22, 1939, in the office of the county clerk, against her real estate therein described.

It was further stipulated that the register of deeds had entered a record that he had received said certificate of award for application No. 28-490, old age assistance, and same was filed in Book 97, p. 192, of the Mortgage Records of Boone County, and that opposite the record of said lien there appears a release thereof by the county clerk on June 23, 1941, reciting that "The within notice of lien is hereby released and discharged."

Exhibit No. 1, introduced at the trial in the district court, was an order, signed by the three members of

the board of county commissioners, instructing the county treasurer to file claim against the estate of Mary Doty, deceased, for $2,402.18, being old age assistance granted her, in accordance with section 68-215, R. S. 1943.

The county treasurer testified that the burden of filing claims against estates was placed upon him under the law, and that when a claim of that type was paid it was sent in with his regular remittance of other state money to the State Auditor.

The administrator in his brief set out 14 assignments of error. However, in this opinion we will combine those which relate to the same legal proposition.

In order to show the close connection between the state and federal funds, we find that Title 42, U. S. C. A., is entitled "Public Health and Welfare." It covers a wide variety of services, of which the Social Security Act is but one, and is found in chapter 7. In general, it is for the purpose of enabling each state to furnish financial assistance to aged needy individuals. Funds available under this act are only paid to those states where the Legislature has provided a state plan for old age assistance. This was designed to operate in a dual fashion and bring states into the cooperative venture. The act was held constitutional. See Allen v. Shelton, 96 F. 2d 102, certiorari denied in 305 U. S. 630, 59 S. Ct. 94, 83 L. Ed. 404; Matcovich v. Anglim, 134 F. 2d 834; Department of Social Welfare v. Wingo, 77 Cal. App. 316, 175 P. 2d 262.

In the 1946 reorganization plan, Congress provided that a Federal Security Administrator be substituted for the Federal Security Board, which was thereupon abolished.

The federal government does not grant any aid to the recipient directly, but the federal government makes a grant to the state government quarterly of approximately one-half the total amount paid for old age assistance. The state distributes all of the United States

funds and the other half is raised by state appropriation. The requirements of the law involve very large sums of money. For instance, in Laws 1947, c. 321, § 27, at pp. 1001-2, there was appropriated from the general fund, from the property tax levy for old age assistance and aid to dependent children and blind assistance, the sum of $14,017,019; from fees and cash funds, including 20 percent of the gasoline tax credited to the assistance fund, and said appropriations include care of crippled children, regulating boarding homes, and boarding children under 16 years of age, an estimate of $4,350,000. There was then appropriated from federal funds for state assistance and child welfare the sum of $17,686,469.

The administrator assigned as an error that the claimant is not the real party in interest, and claimed that section 25-301, R. S. 1943, required that every action must be prosecuted in the name of the person who is the real party in interest. He asked, Is the State of Nebraska, or the United States Government, or the Board of Control, or the State Assistance Department, or its director, the real party in interest? The only answer this court can give is that this action is brought in the exact form provided in section 68-215, R. S. 1943, which reads: "Any claim provided for in this section may be presented to the proper court by the county treasurer, if so directed by the board." It is provided under an amendment, section 68-215.03, R. S. Supp., 1947, effective June 3, 1947, that "In the event that any amount is recovered by a county or the state with respect to old age assistance furnished under sections 68-201 to 68-230, such amount shall be paid into the State Assistance Fund, and the state department is authorized to promptly pay to the United States and to the county the proportionate amount of any such recovery to which each may be entitled."

A similar objection was discussed by the Supreme Court of North Dakota: "The objection to parties plaintiff is based on the assertion that part of the money used

in paying old age assistance is derived from the Federal government and therefore the United States ought to be made one of the parties plaintiff. It is true the Federal government gives a grant to the State; but there is no merit in the contention. The claim against the estate exists in favor of the State. Session Laws 1937, § 21, chap. 211. This section provides: 'On the death of any recipient, the total amount of assistance paid under this Act shall be allowed as a preferred claim against the estate of such person in favor of the State, after funeral expenses, not to exceed One Hundred and Twenty-five ($125.00) Dollars have been paid and after the expense of administering the estate has been paid.'" State v. Wehe, 72 N. D. 186, 5 N. W. 2d 311.

The foregoing provisions of our Nebraska law bring up the further objection of the administrator that part of the recovery, if any, shall be paid to the United States government, which is not a party to the case, and he charges that there is no provision in the federal laws for filing such a claim. In answer to this contention, we find that Title 42, U. S. C. A., section 303, p. 213, as amended, reads in part as follows: "The Administrator shall then certify to the Secretary of the Treasury the amount so estimated by the Administrator, * * * reduced by a sum equivalent to the pro rata share to which the United States is equitably entitled, as determined by the Administrator, of the net amount recovered during any prior quarter by the State or any political subdivision thereof with respect to old-age assistance furnished under the State plan; * * *."

So, perhaps, no specific sum is required to be paid back to the federal government, yet the next quarterly amount paid to our state by the government is proportionately reduced by any sums recovered by claims like this against the estates of deceased recipients.

The federal government at all times has exercised close control over the actions of the state in the matter of payments of old age assistance benefits, and, if there

was any failure on the part of a state to comply substantially with the plan and provisions of the act of Congress, no further certification to the Secretary of the Treasury for payments to such state would be made. Title 42, U. S. C. A., § 304, p. 563.

The administrator of the estate assigns as error that sections 68-215, 68-216, and 68-219, R. S. 1943, violate article I, section 3, of the Constitution of Nebraska, and that the first two of these sections are in conflict with section 1 of the Fourteenth Amendment to the Constitution of the United States, and also with the Fifth Amendment to said Constitution, because they abridge the privilege of citizens of the United States and deprive the heirs and creditors of the estate of Mary Doty of their legal rights and property without due process of law. It is also contended by the administrator that these two sections last mentioned also violate article I, sections 16 and 25, of the Constitution of Nebraska.

The arguments of the administrator in support of these objections may be summed up by saying that he charges that the claim against the estate of Mary Doty does not arise until after her death; that immediately upon her death the title to her real estate vested by law in her heirs. In support thereof, he cited the case of Security Investment Co. v. Lottridge, 2 Neb. (Unoff.) 489, 89 N. W. 298, in which the court held: "Real estate other than the homestead of an intestate decedent, descends to his heirs and the title vests immediately in them subject to the administrator's right of possession and to its application in payment of decedent's debts."

It is said in the brief: "This creates a somewhat ridiculous situation, and it is apparent that we cannot have a lien or claim attaching itself to real and personal property, immediately upon the death of a person when it is definitely settled law that the heirs of the estate have a vested right upon the death of a person who dies intestate."

We do not agree that the provisions of the law are un-

constitutional. May we clarify this situation by a review of the facts.

Mary Doty filed an application for old age assistance in strict compliance with the law. She set out therein a description of the real estate she owned. The application was checked by the county assistance director and forwarded to the state office for approval. The certificate of award was then filed against her property as a lien. Later the record of that lien was released. This was not a lien which could be enforced against her property while she lived. After the death of Mary Doty, when the homestead right had terminated, then the liability for the payments made to her in her lifetime attached to this property as a claim of the fourth class as allowed by the probate court.

"The recipient of old-age assistance applied for and accepted the old-age assistance granted her under the terms of the statute. That application, the grant of assistance, and the acceptance of that assistance constituted a contract beween the plaintiff and the official boards having to do with the matter of the old-age assistance granted to her. Plaintiff entered into that contractual relation with defendants on the only terms they were authorized to deal with her—the terms of the statute,— so she must be held to have consented to the lien which the statute enacted as a condition of the granting of the old-age assistance she thus obtained." Hawkins v. Social Welfare Board, 148 Kan. 760, 84 P. 2d 930.

In an Oklahoma case it was said: "In the second proposition it is argued that the principle that a lien created by the operation of law is dissolved by the death of the person against whose property it is asserted should be applied in the case at bar." Brashears v. State, 194 Okla. 663, 154 P. 2d 101. The court said that this was contrary to its prior holding.

"The State of Ohio, in administering, through the division of Aid for the Aged in the Department of Pub-

lic Welfare, the aid for the aged provision of the Code, acts in a governmental rather than a proprietary capacity. * * * Although the state or an agency thereof may be shorn of its sovereign character by filing an action, this principle should not be given application in a proceeding by the Department of Public Welfare to enforce a claim against a decedent's estate for old age assistance payments made to the deceased so as to defeat the well known principle of law that a statute of limitations does not run against the state's maintaining a legal action in courts." Division of Aid for the Aged v. Marshall, 42 O. L. Abst. 131, 59 N. E. 2d 942.

"* * * that the lien created by sec. 49.26 (4), Stats., was intended to be as enforceable and effective following the death of the joint tenant, who obtained the assistance, as his transfer as security would have been, is evident * * *." Goff v. Yauman, 237 Wis. 643, 298 N. W. 179.

" 'On the death of a person receiving or who has received assistance under this chapter * * *, the total amount paid as assistance, shall be allowed as a lien against the real estate in the estate of the decedent and as a claim of the second class against the personal estate of such decedent, in the event the estate is admitted to probate. Neither the homestead nor the proceeds therefrom of such decedent or his survivor, shall be exempt from the payment of said lien or claim, any act or statute to the contrary notwithstanding.' * * * Under the statute the liens could be enforced only after her death." In re Estate of Ragan, 237 Iowa 619, 23 N. W. 2d 521.

The administrator argues that the statute of limitations has run against this claim, and he cites in support thereof that section 25-206, R. S. 1943, says that an action upon a contract not in writing, expressed or implied, or on an action upon a liability created by statute, can only be brought within four years. He then cites section 25-219, R. S. 1943, which provides that all actions under a liability created by a federal

statute, for which no period of limitations is provided, shall be commenced within three years next after the cause of action shall have accrued. He contends that the old age assistance law has been amended a number of times between 1938 and 1946; that one of these changes provided for the release and satisfaction of all liens or claims against the real estate of any old age recipient (Laws 1941, c. 169, § 2, p. 670), and he insists it cannot be a continuing account when it had been satisfied and released as required by law. He cites also a number of authorities to the effect that the statute of limitations begins to run upon the accrual of the cause of action and that it applies to actions on implied and quasi contracts. 34 Am. Jur., Limitation of Actions, § 145, p. 117.

When the old age assistance law was first enacted (Laws 1935, Sp. Sess., c. 28, § 12, p. 172), it provided as follows: "On the death of a person receiving or who has received assistance under this Act * * * the total amount paid as assistance may be allowed as a claim in favor of the county against the estate of such decedent." And the law is still to the same effect. See § 68-215, R. S. 1943.

The stipulation of the parties in this case shows that Mary Doty began drawing old age assistance payments in July 1938, but regardless of all the amendments and changes in the law it has provided during all of this time that there should be a liability of the estate of the recipient for the amount received.

The statute of limitations does not begin to run until the cause of action has accrued, and in this connection it should be observed that section 68-216, R. S. 1943, provides: "No statute of limitations shall apply to any claim or cause of action, belonging to the state or county and arising under the provisions of section 68-215, while the recipient, former recipient, spouse or such dependent children survive."

We therefore hold that the claim of the administrator

that this action is barred by the statute of limitations is without merit.

The administrator insists that Mary Doty owed nothing while she lived; that it was therefore not a debt, and after her death the assistance officials attempted to make a claim of it against her estate. He contends that Mary Doty could have transferred this property during her lifetime, clear of any claim for her support, and that because she did not do so it is unjust that her heirs and creditors are now deprived of what is rightfully due them.

The reply is that she received a large sum for her comfortable support in her declining days. The law requires estates of deceased recipients to pay back, as far as possible, the assistance received.

We have examined each of the assignments of error and believe this opinion has disposed of all of them, and that the judgment should be affirmed.

AFFIRMED.