254 P.2d 1066

**NEWLAND et ux. v. CHILD.**

No. 7869.

Supreme Court of Idaho.

March 16, 1953.

Kibler & Beebe, Nampa, for appellants.

534

Robert E. Smylie, Atty. Gen., and William H. Bakes, Asst. Atty. Gen., for respondent.

TAYLOR, Justice.

Appellants are husband and wife, and recipients of old-age assistance under the state Public Assistance Law. This law, en-

acted in 1941, creates the state Department of Public Assistance as the agency of the state government to cooperate with the federal government in carrying out the purposes of federal and state acts pertaining to public assistance, and providing the terms, conditions and means of carrying into effect the public assistance therein provided for. The act provides that "Public assistance shall be awarded under this act to persons and families who do not have income and available resources sufficient to provide a reasonable standard of health and well-being", I.C. § 56–205, and further, that old-age assistance "shall be awarded to needy people who have attained the age of 65 years", subject to certain limitations. I.C. § 56–207. Section 56–210, I.C. provides:

"The amount of assistance which any recipient shall be eligible to receive shall be determined, in accordance with the rules and regulations of the state department, with due regard to his requirements, and the conditions existing in his case, and to the income and resources available to him from whatever source, and which shall be sufficient, when added to the income and resources determined to be available to him, to provide him with a reasonable subsistence compatible with health and his well-being: * * *."

The act further provides for an application by a prospective recipient, an investigation by the department of the circumstances of the applicant, a determination of eligibility, and the type and amount of public assistance in case of an award.

As originally enacted the act provided for recovery of any public assistance paid to any person who was not entitled thereto, and for recovery from the estates of deceased recipients under certain conditions and in the discretion of the state department.

In 1951, the Public Assistance Law was amended by adding thereto, § 56–224a, I.C., the material parts of which are as follows:

"Effective July 1, 1951 all old-age assistance awarded under this act to persons owning real property or any interests in real property shall be subject to recovery. Such recovery shall be accomplished in accordance with the following provisions to be effective thereafter:

"(a) Each recipient of or applicant for old-age assistance who owns real property or any interests in real property shall be required to enter into agreement in the manner and form prescribed by the state department by which the recipient shall agree that such real property or any interests in real property has been assigned as security for the recovery of all old-age assistance thereafter awarded to him. * * *

"(b) Upon making an award of old-age assistance the state department

shall forthwith file such agreement for recording with the county recorder of the county in which the real property described in such agreement is situated and the filing and recording of such agreement shall have the same effect as a lien by judgment on said real property. From the time of filing of such agreement all of the real property therein described shall be and become charged with a lien for all assistance received by the applicant as herein provided, which lien shall have priority over all unrecorded encumbrances. * * *"

The section also provided for certification by the department, upon request, of the total amount paid a recipient, and for which a lien is claimed, to the date of the certificate; for foreclosure of the lien in case of transfer of the property prior to recipient's death; and for payment out of the estates of deceased recipients, subject to a prior exemption of $300. All recoveries are required to be deposited in the Cooperative Welfare Fund in the state treasury. This fund was created by the state legislature as a means of furthering the cooperation between the state and federal governments in matters of public assistance. Federal and state funds appropriated and available for public assistance are deposited therein and payments to recipients are made therefrom.

█ Federal grants to the states for old-age assistance are made under the provisions of Title 1 of the National Social Security Act, 42 U.S.C.A. § 301 et seq. While this act itself makes no provision for recovery from the property or estates of deceased recipients, it does require that the federal government be reimbursed for its share of any recoveries made under state law by the provision in Section 303, subsection (b)(2), which provides that payments accruing to the state from the national government, shall be "reduced by a sum equivalent to the pro rata share to which the United States is equitably entitled, as determined by the Administrator, of the net amount recovered during any prior quarter by the State or any political subdivision thereof with respect to old-age assistance furnished under the State plan; * * *". In actual operation, under agreement between the federal and state governments, the pro rata share of recoveries due to the federal government is credited to its account in the welfare fund and its subsequent contributions reduced accordingly. There is, therefore, no merit in appellants' attack upon the state law on the ground that it does not specifically provide for payment of the pro rata share direct to the federal government.

Plaintiffs allege that they were intermarried at Caldwell, in Canyon County, Idaho, September 1, 1909; that seven children were born the issue of said marriage; that they are 79 and 70 years of age, respectively; and they own as their sole community property certain real estate in

the city of Caldwell, which they occupy as their home; that they made application to the Department of Public Assistance and were awarded, and have been paid, old-age assistance, several years prior to the 1951 amendment; that in June, 1951, the defendant, as Commissioner of the Department of Public Assistance, demanded that they execute and deliver to the department the agreement provided for in the 1951 amendment, creating a lien upon their real property as security for the recovery of payments thereafter to be made to them, on pain of being denied further assistance after July 1, 1951; that they were without income or resources to provide a reasonable standard of health and well-being for themselves; and that, because of such necessity and such compulsion, they executed and delivered the agreement pledging their said real property as security for the reimbursement of all assistance payments received by them after July 1, 1951.

The 1951 statute is attacked upon various constitutional grounds. First, they assert it violates art. 1, § 1, of our constitution, which declares as one of the inalienable rights of man the right of "acquiring, possessing and protecting property". Specifically, their contention is that the asserted lien places a cloud upon their title which restricts their right to convey, encumber, or otherwise dispose of their property. Appellants further assert the effect of the law is to deprive them of their property and the enjoyment thereof, without due process of law, in violation of art. 1, § 13, Idaho Const. The right to own and enjoy private property is fundamental. It is one of the natural, inherent and inalienable rights of free men. It is not a gift of our constitutions, because it existed before them. Our constitutions embrace and proclaim it as an essential in our conception of freedom. 11 Am.Jur., Constitutional Law, § 335; Spann v. Dallas, 111 Tex. 350, 235 S.W. 513, 19 A.L.R. 1387. This right of property, though of such high order, is nevertheless subject to reasonable limitation and regulation by the state in the interests of the common welfare. Indeed, a statute imposing any limitation upon the right must be supported by such purpose. State v. Omaechevviaria, 27 Idaho 797, 152 P. 280; 246 U.S. 343, 38 S.Ct. 323, 62 L.Ed. 763; Chambers v. McCollum, 47 Idaho 74, 272 P. 707; Dennis v. Moses, 18 Wash. 537, 52 P. 333, 40 L.R.A. 302; Public Service Comm. v. Grimshaw, 49 Wyo. 158, 53 P.2d 1, 109 A.L.R. 534; 16 C.J.S., Constitutional Law, § 602.

The old-age assistance law is to be distinguished from so-called "poor laws" or "indigent statutes" in that the old-age assistance act does not require that the recipient be a pauper or absolutely destitute to entitle him to payments thereunder. State ex rel. Helpmeyer v. Shroyer, Ohio App., 72 N.E.2d 774; Leigh v. Com'r of Public Health & Charities of Lawrence, 310 Mass. 343, 37 N.E.2d 1017; Warren

County v. Decatur County, 232 Iowa 613, 5 N.W.2d 847.

We held in State ex rel. Nielson v. Lindstrom, 68 Idaho 226, 191 P.2d 1009, 1012, that "The granting of aid to its needy aged is a well recognized obligation of the state and is a governmental function tending to promote the public welfare." Any limitation upon the property rights of recipients in the application of the lien law is amply supported by a public purpose, namely to promote the "common welfare." Preamble. It is this public purpose to which all beneficiaries must look to justify the payments they receive. It is this public purpose which saves the entire public assistance law from direct conflict with Section 2, art. 8, Idaho Const., providing that "The credit of the state shall not, in any manner, be given, or loaned to, or in aid of any individual, * * *". State ex rel. Nielson v. Lindstrom, supra; Alameda County v. Janssen, 16 Cal.2d 276, 106 P.2d 11, 130 A.L.R. 1141; Morgan v. Dept. of Social Security, 14 Wash.2d 156, 127 P.2d 686; Los Angeles County v. La Fuente, 20 Cal.2d 870, 129 P.2d 378; Helvering v. Davis, 301 U.S. 619, 57 S.Ct. 904, 81 L.Ed. 1307.

The "obligation of the state" referred to in the Lindstrom case is to be understood as a moral rather than a mandatory obligation. The theory of the American political system is that the citizen supports the state, not the reverse. Even as to paupers and indigents, there is no constitutional or common-law duty resting upon the state to provide support. The recipient has no vested right to assistance payments. On the contrary, his right thereto is entirely a creature of statute. As such it is subject to being extended, diminished, conditioned or abrogated by the legislature. To entitle him to assert such right, he must comply with all reasonable and nondiscriminatory conditions imposed by the legislative authority. Boone County, etc., v. Myhre, 149 Neb. 669, 32 N.W.2d 262; Scobey v. Fair, 70 Ohio App. 51, 45 N.E.2d 139; Division of Aid for the Aged, etc., v. Hogan, 143 Ohio St. 186, 54 N.E.2d 781; Anno. 86 A.L.R. 912; 40 Am.Jur., Pensions, § 7, p. 966.

"What appellants appear entirely to overlook is the fact that they have no vested rights in old age benefits or in any other form of relief. The state may, as it has, grant such benefits, but it is not required to do so. In granting them it may impose such conditions as it deems proper and just. If a person accepts a grant, he must accept it subject to the conditions." Dimke v. Finke, 209 Minn. 29, 295 N.W. 75, at page 79.

The conditions imposed by the statute are not so onerous as those ordinarily imposed in private lending transactions. On the contrary, the law provides a fair and humane plan by which needy aged, who own a home, may secure old-age assistance

while continuing to occupy and enjoy their home, rather than being required to mortgage or sell it, and consume the proceeds in living expenses before receiving aid. At the same time it preserves the property as a means of reimbursing the welfare fund, thus giving the recipients the satisfaction of paying their own way as far as they are able, and with the least hardship. It also reduces the amount which must be continuously provided by the taxpayers of the state and nation, who, through their legislative representatives, have voluntarily assumed the moral obligation to provide such aid. It is a matter of common knowledge that some states have so burdened themselves with various forms of public assistance and old-age pensions that the threat of insolvency has forced a modification of their plans. In all states the burden of such assistance has become a major problem. Various methods of recovery have been devised, and perhaps none has been entirely satisfactory. Among such plans some states have provided for reimbursement by relatives, legally responsible for the care of their needy elders. This, however, has been found difficult of application and, in some circumstances, unjust. Instead of requiring the relatives to provide the support, or to reimburse the state, our law limits recovery to the estate, or the real property, of the recipient. The relatives are asked only to forego, to the extent of such payments, what they otherwise might inherit. As was suggested in State ex rel. Nielson v. Lindstrom, the real objection to this lien law is that of the prospective heirs.

"The conflict of interest here is not between the State and its needy aged. It is between the State and the heirs, next of kin or other distributees of the estates of the deceased recipients." State ex rel. Nielson v. Lindstrom, 68 Idaho 226, 191 P.2d 1009, 1012.

Having no vested interest, they have no right to complain. In re Smith's Estate, 188 Okl. 158, 107 P.2d 188; 16 C.J.S., Constitutional Law, § 228.

Appellants also contend that, since their status as eligible recipients of old-age assistance was established and recognized prior to the 1951 amendment, the application of the new provision to them would constitute retrospective invasion of a vested right. As already noted, recipients can acquire no vested right under the statute. The legislature may modify the conditions of assistance, or deny it altogether, at any time.

It is also contended that appellants are denied equal protection of the law. Art. 1, § 2, Idaho Constitution. The contention is that they, as owners of real property, are discriminated against, in that they are required to grant a lien upon their property, whereas needy aged who have no real estate, but may own personal property, are granted aid without such requirement, and are therefore preferred. It is recognized that the legislature has broad dis-

cretionary power to make classifications of persons and property for all purposes which it may lawfully seek to accomplish. So long as the classifications are based upon some legitimate ground of difference between the persons or objects classified, are not unreasonable or arbitrary, and bear a reasonable relation to the legislative purpose, such classifications do not violate the constitution. Big Wood Canal Co. v. Chapman, 45 Idaho 380, 263 P. 45; Rowe v. City of Pocatello, 70 Idaho 343, 218 P.2d 695; State v. Evans, 73 Idaho 50, 245 P.2d 788; 50 Am.Jur., Statutes, § 55, p. 77.

▋ Our public assistance law contemplates that all needy aged shall receive assistance according to the individual need of each, "with due regard * * * to the income and resources available to him from whatever source". I.C. § 56–210. Under its provisions and under the regulations which it authorizes, personal property, as well as real property owned by the recipient is taken into consideration in determining the type and amount of assistance, so that all are treated fairly and without discrimination. The classifications are not vulnerable to the objections made. State ex rel. Nielson v. Lindstrom, 68 Idaho 226, 191 P. 2d 1009; Hawkins v. State of Kansas Social Welfare Board, 148 Kan. 760, 84 P.2d 930; Los Angeles County v. Security First Nat. Bank of Los Angeles, 84 Cal.App.2d 575, 191 P.2d 78; Wallberg v. Utah Public Welfare Comm., 115 Utah 242, 203 P.2d

935; Dimke v. Finke, 209 Minn. 29, 295 N. W. 75; Boone County etc., v. Myhre, 149 Neb. 669, 32 N.W.2d 262; In re Opinion of the Justices, 85 N.H. 562, 154 A. 217; Anno. 86 A.L.R. 912; Anno. 125 A.L.R. 712.

▋ Appellants further contend that the 1951 Act is a local and special law violative of art. 3, § 19, Idaho Constitution. Since by its terms it is applicable alike to all persons throughout the state, who come within the respective classes therein provided for, and, the classification being reasonable, and within the authority of the legislature, it is not in any sense a local or special law, within the meaning of the constitution. State ex rel. Nielson v. Lindstrom, supra.

▋ Complaint is also made that the provisions of the 1951 amendment, § 56–224a, I.C., are in conflict with, and therefore repealed by, Chapter 246 of the Session Laws of 1951, which was passed by the same session of the legislature, but subsequently to § 56–224a, I.C. Chapter 246, 1951 Laws, amends certain sections of the Public Assistance Law, including § 56–224, I.C. This last section is the one which originally provided for recovery of public assistance obtained by a person who was not entitled thereto. The amendment added to it by Chapter 246, provides for the recovery of such assistance, paid to one not entitled thereto, by means of a preferred claim against his estate. It is obvious from a reading of these two sections that they are not in conflict. They deal with dif-

ferent classes of recipients. Both are, therefore, valid and effective, and there is no implied repeal. Storseth v. State, 72 Idaho 49, 236 P.2d 1004; Ex parte Dalton, 72 Idaho 451, 243 P.2d 594.

■ It is also contended that § 56–224a is defective in that no provision is made therein for the release of the lien in case of satisfaction thereof prior to the death of the recipient. To this we think it is sufficient to say that it being given the effect of a lien by judgment, and subsection (c) providing for a certificate by the department of the total amount of the lien claimed thereunder to the date of the certificate, and that:

"* * * any person dealing with the recipient may rely upon such certificate as evidencing the amount of the existing lien against the real estate of the recipient",

the legislature intended that it should be subject to release by the department upon payment of the amount of the certificate, in the manner provided by law for the release of a judgment, under §§ 10–1113 and 10–1114, I.C. Cook v. Massey, 38 Idaho 264, 220 P. 1088, 35 A.L.R. 200; Mt. View Rural Tel. Co. v. Interstate Tel. Co., 55 Idaho 514, 46 P.2d 723.

■ Lastly, appellants contend that the lien agreement was obtained by the state by duress, specifically "business compulsion," and for that reason is unenforceable. This contention is likewise without merit. To be voidable because of duress, an agreement must not only be obtained by means of the pressure brought to bear, but the agreement itself must be unjust, unconscionable, or illegal. The essence of duress is the surrender to unlawful or unconscionable demands. It cannot be predicated upon demands which are lawful, or the threat to do that which the demanding party has a legal right to do. Inland Empire Refineries v. Jones, 69 Idaho 335, 206 P.2d 519; Stafford v. Field, 70 Idaho 331, 218 P.2d 338; Ramp Buildings Corp. v. Northwest Building Co., 164 Wash. 603, 4 P.2d 507, 79 A.L.R. 651; Rader v. Barner, 172 Or. 1, 139 P.2d 130; Annotation, Business Compulsion, 79 A.L.R. 655; 17 Am.Jur., Duress, §§ 4, 6, and 7; 17 C.J.S., Contracts, § 172, page 532.

As we have noted, the demand of the state for a lien upon the real property of old-age recipients is lawful, fair and just. Hence, there is no duress or business compulsion involved.

Judgment affirmed.

No costs allowed.

PORTER, C. J., and GIVENS, THOMAS and KEETON, JJ., concur.