No. 21,471.

*In re* THE ESTATE OF JACOB KOEHLER, Deceased. (ANTOIN-
ETTE LOUISE KOEHLER, *Appellant,* v. F. H. GRAY, as Admin-
istrator, etc., *Appellee.*)

### SYLLABUS BY THE COURT.

1. HOMESTEAD—*Findings—No Abandonment.* Findings that the claimant
of a homestead had not abandoned her residence in the city in which
the property in question is situated, and that she considered that city
as her residence, held to imply that she intended to return to the
property and occupy it as a home.

2. SAME—*Death of Both Parents—Homestead Exempt to Unmarried
Daughter.* Property occupied as the homestead of the owner and his
family remains exempt from sale for the payment of his debts after
the death of himself (intestate) and his wife, so long as an unmarried
daughter of full age, who had lived with him as a part of his fam-
ily, continues her residence thereon without interruption. *Battey v.
Barker,* 62 Kan. 517, 64 Pac. 79, overruled.

3. SAME—*Taken by Right of Eminent Domain—Disposition of Proceeds
Among Heirs.* Where the daughter of an intestate occupies his home-
stead under such circumstances as to render it exempt from liability
for his debts, and the property is taken for public purposes by
eminent domain, she is entitled to compensation, not only for the
share of the property owned by her, but also for the right to occupy
the whole.

Appeal from Miami district court; JABEZ O. RANKIN, judge.
Opinion filed April 6, 1918.    Reversed.

*Edwin S. McAnany, Maurice L. Alden, Thomas M. Van
Cleave,* all of Kansas City, and *Frank L. Barry,* of Kansas City,
Mo., for the appellant; *Samuel Maher,* of Kansas City, of coun-
sel.

*R. E. Coughlin,* and *Edward H. Coughlin,* both of Paola, for
the appellee.

The opinion of the court was delivered by

MASON, J.:  Jacob Koehler died intestate in May, 1914, own-
ing a house and a tract of land in Paola, occupied as a home-
stead by himself, his wife, and an unmarried daughter, An-
toinette Louise Koehler, then twenty-one years old.  He was
survived by five other children, all of full age, having homes

elsewhere.  His widow died in August, 1916.  In December, 1916, the administrator of his estate applied for an order from the probate court for the sale of the property referred to, in order to apply the proceeds to the payment of his indebtedness, which exceeded the other assets by about $11,000.  The daughter, Antoinette Louise Koehler, objected to the sale on the ground that the property was still occupied by her, and was exempt by reason of its character as a homestead.  The probate court granted the order, and on an appeal to the district court its decision was affirmed.  The daughter now appeals to this court.

1.  The administrator contends that upon any theory of the homestead law the judgment must be affirmed, because at the time the order of sale was granted the appellant had ceased to occupy the property as a home.  The district court made these findings bearing upon the matter:

"After the death of Jacob Koehler the widow and the appellant continued for a time to occupy the homestead for about a year, after which they rented the homestead and went to New York City temporarily, partly on account of the health of the mother and partly that the appellant might study music.  They did not intend to establish a permanent home in New York.

"The widow died August 22, 1916, and soon after the household goods that were still in the homestead were divided up among the children, the appellant retaining a portion of them, but they were all removed from the real estate in question, and the appellant returned to New York in October, 1916, for the purpose of continuing her musical studies.

"The appellant, Antoinette Koehler, does not intend to remain permanently in New York, but intends to go elsewhere, probably to Kansas City, for the purpose of teaching music, but considers Paola as her place of residence.

"At the time of the filing of this application in the Probate Court the appellant, Antoinette Koehler, had not abandoned her residence in Paola, Kansas."

The administrator insists that these findings merely show that the appellant retains her legal residence in Paola, and do not necessarily imply that she intends to make her home in the house where the family formerly lived.  It is true that no explicit statement is made that she has had, and still retains, such an intention, but we think the findings that she considers Paola as her residence and had not abandoned her residence there must be given that effect.  There is no suggestion that she

ever had a residence in Paola elsewhere than on the property in question. That at one time was her residence. If her legal residence remained in Paola, it remained at the old home. The findings that she considered Paola her residence and had not abandoned her residence there must be regarded as referring to the property in question, and as implying an intention to return thereto; otherwise they would have no bearing upon the issues to be determined. If the trial court had been of the opinion that the appellant did not (at the time the controversy arose) intend to reoccupy the house, a finding would naturally have been made that she had abandoned the homestead as such, thus finally disposing of her claim of exemption.

2. The question for determination, therefore, is whether property occupied as the homestead of the owner and his family remains exempt from sale for the payment of his debts after the death of himself (intestate) and his wife, so long as an unmarried daughter of full age, who had lived with him as a part of his family, continues her residence thereon without interruption. The trial court followed the decision of this court in *Battey v. Barker,* 62 Kan. 517, 64 Pac. 79, in which substantially the same question is explicitly answered in the negative, and unless that case is overruled the judgment here must be affirmed. In that case it was suggested that a homestead necessarily loses its exempt character whenever it is liable to partition, and *Dayton v. Donart,* 22 Kan. 256, is cited in support of the suggestion. There, however, it was the abandonment of occupancy that rendered the property liable to sale. Actual partition does not necessarily destroy all homestead exemption (*Trumbly v. Martell,* 61 Kan. 703, 705, 60 Pac. 741; *Cross v. Benson,* 68 Kan. 495, 505, 75 Pac. 558), and mere liability to partition should not be deemed to affect it.

The decision in the Battey-Barker case, however, was largely influenced by the view that, inasmuch as "the homestead laws apply only to families, and not to single individuals, and apply only where the family occupies the homestead as a residence" (*Farlin v Sook,* 26 Kan. 397, 404), the death of the father, leaving of the former members of his family only an adult daughter, destroyed the family relation, and with it the homestead character of the property. In *Cross v. Benson,* 68 Kan.

Koehler v. Gray.

495, 76 Pac. 558, it was held that property occupied as a homestead by the owner and his wife remained exempt from sale for his debts after his death, so long as his widow still lived there, on the ground that it was still "occupied as a residence by the family of the owner" within the meaning of that phrase as used in the constitution (Art. 15, § 9), because she continued to be "the family of the owner" of the property. In the opinion it was said:

"Some affirmations by way of argument and illustration appear to be opposed to the view here taken. But upon a careful discrimination of the precise points determined it will appear that no former decision need now be overturned. The case of *Battey v. Barker,* 62 Kan. 517, 64 Pac. 74, 56 L. R. A. 33, is most in conflict. The doctrine there applied is the strict one upon which *Ellinger v. Thomas,* 64 Kan. 180, 67 Pac. 529, is based. In the latter case it was held that a sole adult remnant could not himself constitute his own family, so as to preserve land exempt from the payment of his own debts." (p. 509.)

The Ellinger-Thomas case was overruled in *Weaver v. Bank,* 76 Kan. 540, 94 Pac. 273, where it was determined that while a homestead cannot originate without the existence of a household consisting of more than one person, it may persist for the benefit of a single individual who is the sole survivor of the family. There the survivor was the widow of the former owner, and the rule as stated was limited to the survivorship of the husband or wife. We think, however, upon the same reasoning it should be extended to any member of the family. The exemption is for the benefit of the family as a whole, and of each individual composing it, so long as the relation is not severed. (13 R. C. L. 545.) The circumstance that a daughter has arrived at majority should not, in our judgment, prevent her from being considered a part of her father's family. (*C. & N. W. Ry. Co. v. Chisholm, jr.,* 79 Ill. 584; *Strawn et al. v. Strawn,* 53 Ill. 263; *Brooks &c. v. Collins,* 74 Ky. 622; *In re Rafferty,* 112 Fed. 512; 2 Words and Phrases, 2d series, 464), although there is some conflict of opinion on the question. (13 R. C. L. 554, 555.) Nor is it necessary to that relation that there should be a legal duty to support her. (13 R. C. L. 553.) The fact that the statute authorizes the partition of the property whenever the youngest child has reached majority (Gen. Stat. 1915, § 3828), irrespective of its continued occupancy as

a homestead, does not affect the matter, for liability to sale for the purpose of partition is wholly distinct from, and independent of, liability to sale for the payment of debts. (*Towle v. Towle,* 81 Kan. 675, 107 Pac. 228.) The appellant was a constituent part of the family as it existed in the lifetime of her father and mother. By no act of hers has her relation to the family or the property been altered. She remains in the occupancy of the homestead. In the same sense in which the phrase was used in *Cross v. Benson,* she was "the family of the owner"—she was all that was left of it. We conclude, overruling *Battey v. Barker,* 62 Kan. 517, 64 Pac. 79, that the property was exempt from sale on order of the probate court.

3. After the issuance of the order of sale the board of education were about to condemn the property for a school site. A stipulation was entered into by the parties to this litigation, to the effect that condemnation proceedings should be waived, the board should have the property for the agreed sum of $4,200, which should be paid into court and disbursed in accordance with the final decision herein, the rights of none of the parties to be affected by the agreement. It seems to be assumed on both sides that all the money will go to the appellant or appellee. However, the concluding clause of the stipulation referred to reads:

"Should the appellant, Antoinette Louise Koehler, be successful in such [this] adjudication, then the said fund shall be payable to her, or to whomsoever is entitled to the same."

The question as to just what disposition should be made of the fund has not been discussed by counsel. The problem seems to be one as to the distribution of the amount awarded for property taken by eminent domain, where there are various interests to be considered. The appellant is clearly entitled to a share of the amount proportionate to the share of the property which she owns outright as an heir of her father, and as an heir or devisee of her mother. She is (or was) entitled to occupy the entire property, unless it should be partitioned, so long as she saw fit to preserve the existing status. This was a valuable right, difficult but not necessarily impossible of appraisement, for which it would seem she should be compensated. The interests of the other owners of the property were subject to her right of occupancy, and were dimin-

ished in value to that extent. As these owners are entitled to no exemptions on their own behalf, the remainder of the fund, after the payment to the appellant of her share, should doubtless go to the administrator.

The judgment is reversed, and the cause is remanded for further proceedings in accordance herewith.