No. 33,981

Nellie Hawkins, *Appellee*, v. The State of Kansas Social Welfare Board, Jefferson County Welfare Board, R. B. Church, State Social Welfare Director, and Jean H. Clark, County Welfare Director of Jefferson County, *Appellants*.

(84 P. 2d 930)

Opinion filed December 10, 1938.

*Clarence V. Beck*, attorney general, *Wm. E. Scott*, assistant attorney general, *Leland M. Quantius*, special assistant attorney general, *Ora D. McClellan*, attorney for State Board of Social Welfare, and *James S. Lester*, county attorney, for the appellants.

*A. C. Wilson*, of Oskaloosa, for the appellee.

The opinion of the court was delivered by

Dawson, C. J.: This was an action to determine the constitutionality of the lien provision of the social welfare act.

The pertinent facts which laid the foundation for this test case were as follows:

Nellie Hawkins, a widow aged 68 years, owned a small house and parcel of ground in Oskaloosa. It was valued at $550, and was her homestead. Her 42-year-old son lived with her. On September 2, 1937, she applied to the county for old-age assistance. Among the pertinent recitals of her written and verified application was one which read:

"I have not made a transfer or assignment of property within two years prior to this application for the purpose of procuring assistance except as it refers to a lien to the county or state."

Her application was granted on September 8, 1937, and on the same day she was notified that on or about September 10 she would get her first monthly check pursuant thereto. On the same day she was notified that the state's statutory lien on her property as author-

ized by the social welfare act had been filed in the office of the register of deeds, and it was duly recorded the same day.

Thereafter Mrs. Hawkins received monthly checks for old-age assistance in amounts varying from $19.45 to $11.70. She had some little additional income—$4 for the monthly rent of two rooms of her house, and she also received some clothing from the WPA—but these details are of no present concern.

On December 2, 1937, Mrs. Hawkins commenced this action, pleading the foregoing facts at length, and complaining about the statutory lien which had been recorded against her homestead. She alleged that the provision of the social welfare act which authorized it (Laws 1937, ch. 327, sec. 17), was in conflict with the homestead provision (art. 15, sec. 9) of the state constitution, and therefore void. She prayed that the state's lien be declared void and canceled, and that the register of deeds be directed to release it of record.

The cause was heard at length, but developed no material dispute of fact. The trial court sustained the contention of plaintiff, holding so much of section 17 of the social welfare act as conferred on the state a lien on the homestead unconstitutional, and gave judgment for plaintiff as prayed for.

The cause has been brought here for review.

The title to the act with which we are now concerned reads:

"An act setting up a state board of social welfare and county boards of social welfare; providing for the members of each, providing for the employment and control of the personnel of state boards, fixing compensation for each thereof; providing for state appeal committees and the procedure thereof; providing for the establishment of state and county social welfare funds and the disbursement thereof; and authorizing assistance to those over sixty-five years of age, and to the blind, and to dependent children; and other general welfare."

The statute creates a state board of social welfare, county welfare boards and other functionaries, and authorizes the state board to cooperate with the federal government's program for financial assistance in the field of social welfare. Power is conferred upon the state board to determine policies relating to all forms of social welfare which it is to supervise and administer, and to make rules and regulations therefor. It is also authorized to make contracts and "may sue and be sued on such contracts." (Sec. 8, subdiv. k.)

In section 8a the statute provides that subject to specified requirements, "Assistance shall be granted to any needy aged person . . .

who has attained the age of sixty-five years. Such assistance shall be known as old-age assistance."

Section 10 provides that the county welfare board shall provide assistance to the needy "in accordance with state laws and the rules and regulations of the state board." Section 12 provides that a person desiring public assistance shall make an application therefor, and

"Such application shall be under oath and contain a statement of the amount of property, both personal and real, in which the applicant has an interest and of all income which he may have at the time of the filing of the application and such other information as may be required by the state board. All applications for old-age assistance shall be signed by the applicant and spouse, if any. The form of application and the procedure for the determination of need, the amount and kind of assistance shall not be inconsistent with the state law and the rules and regulations of the state board. (*i*) The county board, on the death of a recipient of old-age assistance, may pay reasonable funeral expenses, not exceeding one hundred dollars, if the estate of the deceased is insufficient to pay the same."

The section of the act whose validity is particularly subjected to challenge in this lawsuit reads, in part, thus:

"SEC. 17. The state of Kansas shall have a lien upon any real property which the recipient of any old-age assistance under this act may be the owner of or come in possession of after the granting of any assistance, which lien shall be senior and superior to any lien placed on any such real property after the time such recipient shall first become a client as defined in this act. . . . The filing of such statement [with the register of deeds] shall constitute public notice of the lien and shall remain in full force until discharged as herein provided without any further additional steps being taken. . . . On the death of any recipient the total amount of assistance paid under this act shall be allowed as a claim against the estate of such person after funeral expenses not to exceed one hundred dollars have been paid, and after the expenses of administering the estate have been paid. . . . The lien created against the real estate of the recipient shall not be enforced against the same during his lifetime or while any real estate is being occupied as a home by the surviving spouse."

The same section also provides that where the federal government contributes to the fund out of which the old-age assistance is given, it shall share in any moneys repaid by the recipient of such assistance, or by recovery from the estate of the recipient under the lien provided by the statute.

The constitutional provision which this statutory lien is said to violate is the homestead section, which for three quarters of a century has been so justly prized by the people of this state. It reads:

"A homestead to the extent of one hundred and sixty acres of farming

land, or of one acre within the limits of an incorporated town or city, occupied as a residence by the family of the owner, together with all the improvements on the same, shall be exempted from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists; but no property shall be exempt from sale for taxes, or for the payment of obligations contracted for the purchase of said premises, or for the erection of improvements thereon: *Provided,* the provisions of this section shall not apply to any process of law obtained by virtue of a lien given by the consent of both husband and wife." (Const., art. 15, sec. 9.)

It will be noted, of course, that where this statutory lien does not rest on the homestead of the recipient of old-age assistance, the constitutional provision just quoted has no application. It is where the real property owned by the recipient of old-age assistance is her homestead, as in the case before us—her small house with its three town lots in Oskaloosa valued at $550—that the question of the constitutionality of the statutory lien arises. We are all agreed, as evidenced by oft-repeated decisions of this court, that this homestead provision of the constitution is to be liberally interpreted to safeguard its humanitarian and soundly social and economic purposes; and that nothing less than the free consent of the resident owner of the homestead, and joint consent of husband and wife where that relation exists, will suffice to alienate the homestead, except to enforce payment of its purchase price, or for improvements erected thereon, or for payment of its fair burden of taxation. (Citations under art. 15, sec. 9, in G. S. 1935, pp. lxxi *et seq.;* G. S. 1937 Supp., p. xvi.)

While the statute defines the state's claim on the real estate of a recipient of old-age assistance as a lien, and of course it is a lien, it is not the sort of lien which the state as lienholder can enforce and foreclose on plaintiff's homestead as in the case of an ordinary lien. This statutory lien is altogether inoperative and cannot be enforced during the lifetime of the recipient, or during the life of the recipient's surviving spouse if the property covered by the lien continues to be used as the homestead of such surviving spouse. In other words, so long as the property is the homestead of the recipient or of his or her surviving spouse, it cannot be alienated under the constitution, and neither can it be alienated under the statute. The statute expressly so declares. It is only when the property ceases to be a homestead and after the death of the owner who is the recipient of old-age assistance, that the property can be subjected to the statutory lien.

If the foregoing does not suffice as a complete answer to the contention that section 17 violates the homestead section of the constitution, there is another answer which in the opinion of a majority of this court is equally good. The recipient of old-age assistance applied for and accepted the old-age assistance granted her under the terms of the statute. That application, the grant of assistance, and the acceptance of that assistance constituted a contract between the plaintiff and the official boards having to do with the matter of the old-age assistance granted to her. Plaintiff entered into that contractual relation with defendants on the only terms they were authorized to deal with her—the terms of the statute—so she must be held to have consented to the lien which the statute enacted as a condition of the granting of the old-age assistance she thus obtained.

It will not do to say that her consent was not voluntary, was not contractual—for if that contention were at all tenable, the primary legal question raised by the state in the district court and still insisted on in this court, would force itself to the front. That question is: By what authority did the district court obtain jurisdiction of the state social welfare board, so as to subject it to a lawsuit in Jefferson county? Either the relationship between plaintiff and defendants was contractual, in which case the statute says the state board may sue or be sued (*McCandliss Construction Co. v. Neosho County Comm'rs*, 132 Kan. 651, 296 Pac. 720), or it was not maintainable at all. (*Construction Co. v. Board of Administration*, 105 Kan. 291, 182 Pac. 386; *Phillips v. State Highway Comm.*, ante, p. 702, 84 P. 2d 927, this day decided.)

Another objection to the lien provision of the statute is that the matter contained in section 17 is not fairly indicated in the title to the act. The lien feature is a germane and pertinent detail of the act, and that is quite sufficient to satisfy the constitutional requirement of article 2, section 16, that the subject matter of an act be clearly expressed in the title, and that no bill contain more than one subject. See discussion of this constitutional point in *City of Wichita v. Sedgwick County*, 110 Kan. 471, 473, 204 Pac. 693, and citations under article 2, section 16 of the state constitution, in G. S. 1935, pp. xlviii *et seq.;* G. S. 1937 Supp., p. xv.

There is no constitutional infirmity in section 17 of chapter 327 of the Laws of 1937 (G. S. 1937 Supp. 39-719) ; and the judgment of the district court must therefore be reversed and the cause remanded with instruction to enter judgment for defendants. It is so ordered.