No. 34,871

In the Matter of the Estate of John Dittemore, Deceased. (P. J. SULLIVAN, P. K. DEVEREUX and R. W. MORLEY as Administrators of the Estate of J. M. Morley, Deceased, and E. F. KARR, *Appellants,* v. J. M. DITTEMORE, Executor of the Last Will and Testament of John Dittemore, Deceased; HUBERT DITTEMORE, EVERETT DITTEMORE and J. M. DITTEMORE, Devisees under the Last Will and Testament of John Dittemore, Deceased, *Appellees.*)

(106 P. 2d 1056)

Opinion filed November 9, 1940.

. *L. E. Helvern,* of Hiawatha, *A. O. Delaney, Jr.,* and *Wm. H. Strahan,* both of Troy, for the appellants.

*C. W. Reeder,* of Troy, for the appellees.

The opinion of the court was delivered by ·

DAWSON, C. J.: This is an appeal from a judgment holding that a certain farm in Doniphan county was a homestead and exempt from execution for the satisfaction of certain claims against the estate of its late owner, John Dittemore. Certain incidental questions are also presented for review. These will be noted later if they require attention, otherwise not.

John Dittemore was a bachelor and owned a farm of 116½ acres in Doniphan county. He had a brother who owned a neighboring farm of 300 acres on which he lived with his wife and three small sons. In 1906 that brother died, following which John Dittemore resided for a time with his widowed sister-in-law and his three young nephews of the ages of ten, seven, and three years, respectively.

In 1908 John Dittemore took up his residence on his own farm, and the widow and her three sons took up their abode with him. This household arrangement continued for the next five years, until 1913, when the mother of his three nephews died. These minors continued to make their home with their uncle until they grew to manhood. The eldest thereafter married and established a home of his own. The other two nephews remained single and continued to live with their uncle in his farm home until his death in 1937, and they still continue to reside thereat.

The main question in this lawsuit is whether the homestead character of the John Dittemore farm residence still continues for the benefit of those who reside under its rooftree.

The probate court ruled against the homestead exemption, but on appeal the district court sustained it. Its pertinent conclusions of fact and of law, in part, read:

"The court further finds that . . . About the year 1908, said John Dittemore took to live with him on this land [116/½ acres], the widow and three sons of a deceased brother. At that time the children were ten, seven and three years of age, respectively. There they lived until the death of the widow and thereafter the family consisted of an uncle, John Dittemore, and the three

nephews. Later one of the nephews married and lived on another farm. At the time of his death in 1937, John Dittemore lived on this land with his two nephews. The two nephews continue to reside on the land.

. . . . . . . . . . . . . . . . .

"The court finds that said 116 acres in question was the homestead of John Dittemore and is therefore not subject to sale to pay the claims against his estate.

. . . . . . . . . . . . . . . . .

"It is therefore by the court on findings above set out considered, ordered and adjudged that the real estate in question was the homestead of said John Dittemore, in his lifetime, and now is the homestead of his two nephews and is exempt from sale for the payment of the debts of John Dittemore, deceased."

Hence this appeal, the chief error assigned being based on the finding "that the real estate in question was the homestead of John Dittemore in his lifetime and is now the homestead of [Everett Dittemore and Hubert Dittemore] his nephews, and not subject to the payment of debts of John Dittemore, deceased."

The constitutional and statutory provisions of the Kansas homestead law (Const., art. 15, sec. 9; G. S. 1935, 60-3501) declare that a homestead to the extent of one hundred and sixty acres of farming land, or one acre within the limits of an incorporated town or city, occupied as a residence by the family of the owner, together with all the improvements on the same, shall be exempted from forced sale under any process of law (subject to exceptions not here pertinent). These provisions of law have been interpreted, expounded and applied by this court many times since the foundation of this state. (Hatcher's Kan. Dig. 1070-1084, and Supp. 241-242; 5 West's Kan. Dig. 663-700; Kan. Judicial Council Bulletin, 9th Ann. Rep., Part 2, July, 1935.) The dominant feature of our many pertinent decisions has invariably been that of liberality of construction. In *Hawkins v. Social Welfare Board,* 148 Kan. 760, 84 P. 2d 930, it was said:

"We are all agreed, as evidenced by oft-repeated decisions of this court, that this homestead provision of the constitution is to be liberally interpreted to safeguard its humanitarian and soundly social and economic purpose." (p. 763.)

See, also, *Anderson v. Shannon,* 146 Kan. 704, 711, 73 P. 2d 5, 114 A. L. R. 200.

It can hardly be gainsaid that when John Dittemore opened his farm home to his widowed sister-in-law and her three small sons, his own nephews, his home thereby became a family household and he became the head of that family, and his farm residence became a family homestead. The term "family," as used in the Kansas home-

stead law, is also interpreted most liberally. It extends not only to the group comprised of father, mother and children, but to various other groups bound together by ties of consanguinity living together as a household. The statute declares: "The phrase 'head of a family' shall include any person who has charge of children, relatives or others living with such person." (G. S. 1935, 77-201, 29th clause.) And where the homestead character has once attached to the residence of a family group, it will continue so long as one of its number resides therein, although deaths or separations may reduce the remainder to a single member. Thus it has been held that the homestead character of the family residence continues where it is occupied by the widow as sole survivor of the family membership. (*Weaver v. Bank,* 76 Kan. 540, 94 Pac. 273; *Boulls v. Boulls,* 137 Kan. 880, 22 P. 2d 465.) It likewise persists where it continues to be occupied by the head of the family although he himself be the sole survivor of that family. (*Weaver v. Bank,* supra, overruling *Ellinger v. Thomas,* 64 Kan. 180, 67 Pac. 529.) It persists for the benefit of an adult unmarried daughter, resident therein, who is the sole survivor of the family of which she was a member. (*Koehler v. Gray,* 102 Kan. 878, 172 Pac. 25, L. R. A. 1918D, 1088, overruling *Battey v. Barker,* 62 Kan. 517, 64 Pac. 79.) The death of the owner does not necessarily extinguish the homestead character of his domicile; it "persists in favor of the family, even though it may consist of but a single person." (*Breen v. Breen,* 102 Kan. 766, 768, 173 Pac. 2.)

If it be conceded that when Dittemore's widowed sister-in-law and her three small sons took up their permanent abode with him they became in legal effect his family and he became the head of it —as we think they did—the question is bound to intrude: When thereafter did that group of persons cease to constitute the family? Not when the widowed mother of the three boys died in 1913. They were still minors, of the ages of 16, 12 and 8 years, respectively, and their uncle stood in *loco parentis* toward them more than ever. (See excerpts from ruling cases in *Cross v. Benson,* 68 Kan. 495, 510, 511, 75 Pac. 558.) The uncle's household still continued to constitute a family. When can it be said to have ceased to be a family? The death of the uncle himself would not determine it. The fact that one son had grown and married and set up a domicile of his own would not dissolve it. His brothers continued to be members of their uncle's family and occupants of that family

domicile. That both these younger brothers eventually attained their majority would not dissolve it. (*Koehler v. Gray*, supra.)

Among notable cases touching the homestead law, cases from the Iowa state and federal courts are frequently cited in textbooks and encyclopedias. Thus in *Tyson v. Reynolds*, 52 Ia. 431, 3 N. W. 469, the "head of the family" was held to include a widower whose adult son and his son's wife continued to reside with him, and his domicile was judicially accorded the status of a homestead and exempt from execution for the satisfaction of his debts. While in that case the son and his wife were provided for by the father as dependents, the court said, "There need not, of necessity, be dependence or obligation growing out of the relation." (*Fox v. Waterloo Nat. Bank*, 126 Ia. 481, 102 N. W. 424.) In *Arnold v. Waltz*, 53 Ia. 706, 6 N. W. 40, it was held that an unmarried woman who had taken charge of the two children of her sister, upon the latter's death, and at her request, and with whom they lived in her own house, was held to be the head of a family and entitled to the homestead exemption. In *In re Opava*, 235 Fed. 779, the Iowa homestead law was drawn in question in a bankruptcy case. The first headnote of this instructive and convincing case, well fortified with apt citations from various states, reads:

"A 'family' is a collection of persons living under one roof, having one head or manager; and the 'head of a family' is one who controls, supervises, and manages the affairs of the household. Therefore, a priest of the Roman Catholic Church who induced his sister to come from a foreign country and live with him, agreeing to pay over to her all his income outside of his personal expenses, the sister to maintain the household and have any amount saved, is a 'head of a family' within the Code, Iowa 1897, § 4008, making exemptions to the heads of families."

Counsel for appellants stress the fact that when the brother of John Dittemore died in 1906 he left an estate of 300 acres of valuable Doniphan county land which devolved on his widow and children, and that this land yielded a substantial annual income, and in consequence the widow and children of his deceased brother were not financially dependent on him for support. We are asked to hold that on this account they did not become members of John Dittemore's family in 1908, nor did his domicile thereby become a family homestead. Such a strained interpretation of the homestead statute would be radically at odds with the many liberal expositions this court has given it in the last three-quarters of a century. Land income in this state is an uncertain asset, dependent as it is upon

the vicissitudes of our changeable climate. In western Kansas occasionally such bountiful harvests are reaped as to surpass those of Doniphan county and again that part of the state suffers a succession of crop failures and the land yields no income. We could not develop a rule which would affect the status of a family homestead, making it depend 'upon the actuality and regularity of a rental income from lands belonging to members of the family group.

When John Dittemore died he devised his farm to his three nephews, but that fact had no effect upon its exempt character as a homestead under familiar decisions. (*Postlethwaite v. Edson,* 102 Kan. 619, 171 Pac. 769; *Hicks v. Sage,* 104 Kan. 723, 180 Pac. 780.)

We have noted other questions presented in the briefs of counsel: Whether the probate court had jurisdiction to allow and classify claims against the estate of John Dittemore, when such claims were dormant and had not been revived, and whether the district court had authority to change such classification, and whether this appeal was brought in time. Manifestly the conclusion on the main question we have reached renders consideration of such details superfluous.

The judgment is affirmed.