(933 P.2d 151)

No. 75,350

In the Matter of the Estate of ABE L. PHILLIPPE, Deceased.

Opinion filed February 7, 1997.

*Brian M. Vazquez*, of Kansas Department of Social and Rehabilitation Services, of Topeka, for appellant.

*Terry S. Stephens*, of Wichita, for appellee.

Before BRAZIL, C.J., PIERRON and ROYSE, JJ.

BRAZIL, C.J.: The Estate Recovery Unit of the Kansas Department of Social and Rehabilitation Services (SRS) appeals the district court's judgment allowing Fred Phillippe to claim a homestead exemption for the house previously owned by his father, the decedent Abe Phillippe. SRS challenges the sufficiency of the evidence indicating Abe intended to treat the property as his homestead after his move to a nursing home. SRS also contends that Fred is not a part of Abe's family under Kansas homestead law. Last, SRS contends its medical benefits claim against Abe's estate

constitutes a consensual lien which is excepted from the homestead exemption. We affirm.

In 1972, following his divorce, Fred Phillippe moved into his parents' home. Fred's mother died in 1990, and in 1991 Abe was diagnosed with cancer. Abe moved to a nursing home because Fred could no longer provide the care he needed. Abe lived in the nursing home until his death in October 1994.

In 1995, the Estate Recovery Unit of SRS unsuccessfully petitioned the district court to recover $33,779.06 in medical assistance benefits it had provided to Abe. The court concluded that Abe did not abandon his homestead and also held that Fred was a part of Abe's family and therefore was entitled to claim the homestead exemption. The court allowed SRS's claim, but held that the homestead exemption prevented SRS from acquiring a lien on the property. The court determined that SRS merely had an inchoate interest which would not vest while the property was occupied as a homestead.

## Homestead

The homestead exemption is set forth in the Kansas Constitution. See Kan. Const. Art. 15, § 9. The probate code also includes the homestead exemption:

"A homestead to the extent of 160 acres of land lying without, or of one acre lying within, the limits of an incorporated city, or a manufactured home or mobile home, occupied by the decedent and family, at the time of the owner's death, as a residence, and continued to be so occupied by the surviving spouse and children, after such death, together with all the improvements on the same, shall be wholly exempt from distribution under any of the laws of this state, and from the payment of the debts of the decedent, but it shall not be exempt from sale for taxes thereon, or for the payment of obligations contracted for the purchase thereof, or for the erection of improvements thereon, or for the payment of any lien given thereon by the joint consent of husband and wife. The title to the homestead property of a decedent shall pass the same as the title to other property of the decedent." K.S.A. 59-401.

SRS contends that the evidence does not support a finding that Abe intended to treat the property as his residence and homestead. Fred, on the other hand, frames the issue as whether the evidence shows Abe abandoned the homestead.

Implicit in the district court's finding that Abe did not abandon the homestead is a finding that a homestead existed. Whether a homestead exists is a question of fact, and this court will not disturb findings of fact that are supported by substantial competent evidence. *In re Estate of Fink*, 4 Kan. App. 2d 523, 526, 609 P.2d 211, *rev. denied* 228 Kan. 806 (1980). The evidence shows that Abe lived at the residence continuously for approximately 20 years prior to moving into the nursing home. Clearly, a homestead existed. Thus, the question is whether Abe abandoned the homestead.

This court addressed abandonment of homesteads in *In re Estate of Fink*:

"Once it has been established that a homestead interest in property exists, then the burden of proof is on the party attempting to defeat that interest to show by positive and clear evidence that the homestead has been abandoned, as there is a presumption that once established the homestead continues until the contrary is shown. *Bellport v. Harder*, 196 Kan. 294, 411 P.2d 725 (1966). Whether a homestead has been abandoned is a question for the trier of fact. *Waltz v. Sheetz*, 144 Kan. 595 [, 61 P.2d 883 (1936)]. Two tests must be met before a homestead interest may be destroyed or abandoned: (1) there must be a removal from the property, and (2) there must be an intent not to return." 4 Kan. App. 2d at 527-28.

SRS argues that the evidence does not show Abe intended to return to the residence. However, under the law stated in *In re Estate of Fink*, SRS had the burden to show by positive and clear evidence that Abe did not intend to return to the residence. The only evidence possibly indicating Abe did not intend to return is the fact that, after his move to the nursing home, Abe stopped filing for a homestead tax exemption. See K.S.A. 79-4501 *et seq.* However, Fred explained that Abe did not deal with the taxes after he went into the nursing home. The tax exemption evidence does not constitute positive and clear proof that Abe did not intend to return to his residence.

By finding that Abe did not abandon his homestead, the district court essentially held that SRS did not sustain its burden of proof to show Abe had abandoned the residence. A finding that a party failed to meet its burden of proof is a negative finding, see *Mohr v. State Bank of Stanley*, 244 Kan. 555, 567, 770 P.2d 466 (1989),

which will not be overturned absent proof of an arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion or prejudice. *Lostutter v. Estate of Larkin*, 235 Kan. 154, Syl. ¶ 1, 679 P.2d 181 (1984). See *Sunflower Racing, Inc. v. Board of Wyandotte County Comm'rs*, 256 Kan. 426, 441, 885 P.2d 1233 (1994). In the present case, the district court did not arbitrarily disregard undisputed evidence of Abe's intent. We uphold the district court's finding that Abe did not abandon his homestead.

SRS also argues that the district court acted improperly by taking judicial notice of the fact that "there isn't a person that ever went into a care home that didn't want to come home." However, the court's statement is in accord with the legal proposition that a homestead is presumed to continue until the contrary is shown. See *In re Estate of Fink*, 4 Kan. App. 2d at 527. SRS had to prove Abe did not intend to return to his residence, and the court did not foreclose SRS from presenting evidence to that effect. SRS is not entitled to relief.

### *Family Member*

The homestead exemption extends to members of the decedent's family. See Kan. Const. Art. 15, § 9; K.S.A. 59-401. At the district court level, SRS argued that Fred was not a member of Abe's family as defined under Kansas homestead law. The district court disagreed and held that Fred was a part of Abe's family. On appeal, SRS challenges the district court's conclusion.

Our Supreme Court defined "family" liberally in *In re Estate of Dittemore*, 152 Kan. 574, 576-77, 106 P.2d 1056 (1940): "The term 'family,' as used in the Kansas homestead law, is also interpreted most liberally. It extends not only to the group comprised of father, mother and children, but to various other groups bound together by ties of consanguinity living together as a household." At first glance, Fred appears to come within the definition of family by virtue of his status as Abe's son.

SRS contends that Fred was not part of Abe's family because Fred had not continuously occupied the residence from the time when he was a minor. SRS cites *In re Estate of Dittemore*, 152 Kan. 574, and *Koehler v. Gray*, 102 Kan. 878, 172 Pac. 25 (1918),

pointing out that in both cases the children claiming the homestead exemption occupied the residence continuously from minority. SRS argues that because Fred at one time moved out of the residence and subsequently moved back in following his divorce, he is not part of Abe's family.

SRS misconstrues the cited cases. Neither case stands for the proposition that a child must live in a residence continuously from minority in order to be a part of a family under Kansas homestead law. SRS's contention lacks merit.

SRS next argues that Fred is not part of Abe's family because Fred was not a dependent of Abe or under Abe's care and control. SRS asserts that for a family relation to exist, there must be a dependence relationship, similar to a parent/minor child relationship, in which the parent takes moral responsibility for the child.

SRS bases its contention on *Cross v. Benson*, 68 Kan. 495, 75 Pac. 558 (1904), where the court considered a minor child residing with her grandparents. Although the child's father was alive, the child's grandparents were morally responsible for her, and she was dependent upon them. The court held that the child was a part of the grandparents' family for purposes of Kansas homestead law. The court concluded that the direct relation of parent and child need not exist in order to constitute a family. 68 Kan. at 509-11. However, the court did not hold, as SRS suggests, that dependence and moral responsibility are prerequisites to the existence of a family relationship.

Kansas law does not support SRS's legal theory. In *In re Estate of Dittemore*, the court stated that " '[t]here need not, of necessity, be dependence or obligation growing out of the relation.' " 152 Kan. at 578 (quoting *Fox v. Waterloo Nat. Bank*, 126 Iowa 481, 102 N.W. 424 [1905]). The *Koehler* court also observed that "[n]or is it necessary to that relation that there should be a legal duty to support [the child]." 102 Kan. at 881. Kansas courts interpret the term family most liberally, and the *Dittemore* case states that family extends to father, mother, and children. 152 Kan. at 576-77. Accordingly, we hold that Fred is a part of Abe's family for purposes of Kansas homestead law.

## Lien

The district court allowed SRS's claim, but held that the homestead exemption prevented SRS from acquiring a lien on Fred's residence. SRS contends that its claim constitutes a consensual lien against the property and therefore is excepted from the homestead exemption.

"A judgment lien does not attach to a homestead unless it is based on one of the exceptions set out in the homestead exemption." *In re Marriage of Beardslee*, 22 Kan. App. 2d 787, 792, 922 P.2d 1128 (1996). See *Jones v. St. Francis Hosp. & School of Nursing*, 225 Kan. 649, 653, 594 P.2d 162 (1979); *In re Marriage of Johnson*, 19 Kan. App. 2d 487, 489, 872 P.2d 308 (1994). K.S.A. 59-401 provides that a homestead "shall not be exempt from sale . . . for the payment of any lien given thereon by the joint consent of husband and wife." However, the evidence does not indicate that Abe ever expressly granted SRS a lien against his residence.

SRS argues that the lien was created by statute. K.S.A. 1995 Supp. 39-709(g)(2) states that the amount of medical assistance paid constitutes "a claim" against the estate of a deceased recipient.

SRS compares the present situation to *Hawkins v. Social Welfare Board*, 148 Kan. 760, 762-764, 84 P.2d 930 (1938), where the court considered the constitutionality of a statute which granted "a lien upon any real property" owned by the recipient of old-age assistance payments. In determining that the statute did not violate the homestead exemption set forth in the constitution, the court held that although a statutory lien existed, it was subordinate to the homestead exemption. The court concluded that the lien could not be enforced as long as the real estate retained its character as a homestead. In the alternative, the court reasoned that the recipient of the old-age assistance consented to the statutory lien by applying for and accepting the payments. 148 Kan. at 764.

*Hawkins* is distinguishable on its facts. The statute in *Hawkins* expressly created a lien on the real property of the recipients of old-age assistance. In contrast, K.S.A. 1995 Supp. 39-709(g)(2), although giving SRS a right of recovery, does not create a lien

against the real property of those who receive medical assistance payments. Therefore, Abe did not consent to a lien against his real property by accepting medical assistance from SRS.

Because no consensual lien exists, SRS cannot enforce its claim against Abe's estate. An unsecured claim acquires no present existing lien against a homestead, but rather constitutes an inchoate interest which does not vest as long as the property retains its character as a homestead. *In re Estate of Casey*, 156 Kan. 590, 599, 134 P.2d 665 (1943). The district court correctly held that the homestead exemption prevented SRS from enforcing its claim against Abe's estate.

Affirmed.